## Katzman v. Commonwealth.

(Decided October 6th, 1910.)

Appeal from Jefferson Circuit Court (Criminal Division).

1. Opium—Statute Regulating Sale of by Druggist, Upheld.—Section 2630 of the Kentucky Statutes providing that the sale of opium and other poisons by retail, without a physician's prescription, and subjecting the druggist to a penalty, unless the sale is for a legitimate purpose, is not void for uncertainty.

2. Police Power of the State.—It is competent for the legislature under the police power to impose reasonable restrictions upon the sale of drugs and poisons.

3. Penal Statutes—Sufficiency.—A penal statute creating an offense must be sufficiently plain and exact to enable persons of ordinary intelligence to understand its provisions. Its mandate should be so clearly expressed that any ordinary person can determine in advance what he may and what he may not do under it.

4. Penal Statutes—Construction.—Every penal statute should be given a reasonable construction—one that will effectuate the legislative intent in its enactment; and if it describes the offense in language that can be understood by persons of ordinary intelligence, it will not be declared invalid on the ground of uncertainty. The established rules of construction do not require that the sufficiency of penal statutes should be measured by a technical standard that would impair their efficiency and make their enforcement difficult, if not impossible.

5. Same.—When words are used in a penal statute that have both

a popular and a trade or technical meaning, and as used in the statute they have reference to a trade or profession, these words in construing the statute should be given their meaning as understood by the trade or profession to which they apply.

6. Same.—The construction of words and phrases in a statute is usually for the court; but if they are susceptible of two meanings, depending on the state of facts it is attempted to apply them to, the court may instruct the jury in the words of the statute and leave them to find from the evidence whether it has been violated.

7. Retail.—The word "retail" means the sale of commodities in small quantities or parcels.

8. Sale of Drug by Retail.—The sale of opium and other poisons, in the absence of a prescription, unless the seller in good faith exercises reasonable care to satisfy himself that the purchaser intends to use the drug for a legitimate purpose, subjects the seller to the penalty denounced by the statute.

9. Expert Testimony.—Druggists and physicians may testify as experts upon the question of whether or not a sale of opium or other poison by retail is for a legitimate reason.

10. Classification in Statute.—The fact that the statute is confined to sales by retail, and does not apply to sales by wholesale, is not an unreasonable classification. There is a well defined distinction between a sale of goods by retail and wholesale, and it was competent for the legislature in the exercise of the police power and to accomplish the purpose intended to make it a penalty to sell the prohibited article by retail without mentioning its sale in wholesale quantities.

ALFRED G. KRIEGER for appellant.

JAMES BREATHITT, Attorney General, TOM B. McGREGOR, Asst. Attorney General, LORAINE MIX, Asst. Com. Atty., and ED-WARD BLOOMFIELD, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The information filed by the Commonwealth against the appellant, who is a druggist, charged that he unlawfully sold at retail, not on a physician's prescription, to Will Frazier a certain quantity of poison, to-wit: Opium, without satisfying himself that such poison was to be used for legitimate purposes, and with the knowledge that it was intended for smoking purposes or for habitual use. It was returned under section 2630 of the Kentucky Statutes, reading in part:

"No person shall sell at retail any poisons except as herein provided, without affixing to the bottle, box,

vessel or package containing same, a label printed or plainly written, containing the name of the article, the word "poison" and the name and place of business of the seller, with the common name of two or more readily accessible antidotes; nor shall he deliver poison to any person without satisfying himself that such poison is to be used for legitimate purposes. A poison, in the meaning of this act, shall be any drug, chemical, or preparation which, according to standard works of medicine or materia medica, is liable to be destructive to adult human life, in quantities of sixty grains or less. It shall be the further duty of any one selling or dispensing poisons, which are known to be destructive to adult human life in quantities of five grains or less, before delivering them, to enter in a book kept for that purpose the name of the seller, the name and residence of the buyer, the name of the article, the quantity sold or disposed of, and the purpose for which it is said to be intended. * * * The provisions of this section shall not apply to the dispensing of poisons in not unusual quantities, or doses, on physicians' prescriptions, nor to the sale to agriculturists or horticulturists of such articles as are commonly used by them as insecticides. * * *"

It is agreed that the appellant is a retail druggist; that he sold the opium charged in the information to the purchaser for the purpose of allowing the purchaser to smoke the same; that he knew before making the sale that the purchaser was addicted to the use of opium; that it was not sold on a physician's prescription; that it is a poison, destructive to adult human life in quantities of five grains or less. It is further agreed that there was affixed to the bottle or package containing the opium a printed label, giving the name of the article, the word "poison," and the name and place of the seller, with the common name of two readily accessible antidotes; and that before delivering the poison appellant entered in a book kept for that purpose as required by the statute the name of the seller, the name and residence of the buyer, the name of the article, the quantity sold, and the purpose for which it was said to be intended.

It will thus be observed that the offense charged against the appellant consisted in selling the drug by retail without a prescription to a person addicted to the use of it; and this being so, the sale was not made for a legitimate purpose.

The law and facts were submitted to the court without the intervention of a jury, and the appellant was found guilty of violating the statute.

A reversal is asked upon the ground that the statute is invalid for uncertainty because it does not define as it should have done the words "retail" and "legitimate purposes," and because it makes an arbitrary and unreasonable discrimination in excluding from its provisions manufacturing chemists and druggists selling by wholesale, and has the effect of depriving the appellant of his liberty and property without due process of law.

That it is competent for the Legislature to impose reasonable restrictions upon the sale of drugs and poisons there is no room to doubt. It has been so often held that laws controlling and regulating the sale of these articles come within the police power of the State that we do not deem it necessary to do more than cite the case of the Kentucky Board of Pharmacy v. Cassidy, 115 Ky. 690, and call attention to the numerous authorities therein cited. Indeed, counsel for the appellant does not attack the statute upon the ground that it was not within the power of the Legislature to enact a law regulating the sale of opium or other drugs or poisons, but upon the theory that this power was not properly exercised. If this statute is so uncertain and indefinite in describing what will constitute the offense denounced by the statute that persons of ordinary understanding cannot comprehend its meaning or determine when they have violated its provisions, then it is open to the objection urged against it. The law is well settled that a penal statute creating an offense must be sufficiently plain and exact to enable persons of ordinary intelligence to understand its provisions. As said by Justice Brewer, in Chicago Railroad Co. v. Day, 35 Fed. Rep., 866: "No penal law can be sustained unless its mandates are so clearly expressed that any ordinary person can determine in advance what he may and what he may not do under it."

And this principle, which was fully approved by this court in L. & N. R. Co. v. Commonwealth, 99 Ky., 132, we have no disposition to modify or depart from.

In the argument in support of the objection mentioned, it is said that the Legislature should have defined the meaning of the words "retail" and "legitimate purposes," so that a druggist might know what quantity would constitute a sale by retail and what would or

would not be considered a sale for legitimate purposes; and so, that there could not be two opinions as to what these words mean when different courts or juries came to pass upon questions involving a violation of the statute. It may be admitted that although the meaning of the words "retail" and "legitimate purposes," as used in the statute are reasonably well understood, it is nevertheless possible that there might be difference of opinion as to whether in a given state of case the sale of a drug was by retail or for a legitimate purpose, and it is possible that in administering this statute it may occasionally happen that a druggist will be accused who claims not to know what constitutes a sale by retail or what is a legitimate use of opium; and it is also possible that different trial courts and juries may not always be harmonious in the conclusions reached upon this point. But the fact that there may be occasional doubt or want of agreement on this question cannot be allowed to invalidate the statute. If this rule obtained, many penal statutes that have stood unquestioned for years and have been often enforced would be held invalid. There are numerous statutes in existence creating and describing offenses the enforcement of which often brings into prominent notice a question concerning the meaning of words in the law about which different persons might reach a different conclusion. In the trial of many criminal cases there are of necessity submitted to the jury issues involving the meaning of certain words upon which depend the guilt or innocence of the accused; and with the court or jury, as the case may be, is left the decision whether or not the law under which the prosecution is pending has been violated. It would of course be extremely desirable if every penal statute could be made so plain as not to leave any doubt as to its meaning, and so intelligible as that every person could by reading it at once decide what he might with safety do under it. But this ideal condition is not attainable. It would not be at all practicable to define in every statute the meaning of controlling words in it, that there may be difference of opinion concerning when it is attempted to apply them to a given state of facts. To do this would extend to unreasonable length almost every statute that creates and describes an offense, and would also complicate and confuse the administration of the criminal law as the definitions would often be as uncertain as the thing defined. Every penal statute should be given a reasonable con-

struction, one that will effectuate the legislative intent in its enactment; and if it describes the offense in language that can be understood by persons of ordinary intelligence, it will not be declared invalid on the ground of uncertainty. The established rules of construction do not require that the sufficiency of penal statutes should be measured by a technical standard that would impair their efficiency and make their enforcement difficult, if not impossible. A little common sense, as well as legal learning, must be used in the practical administration of the law; and it is not essential that a statute shall be so elaborate in its detail as to attempt to meet every possible state of fact that may arise under it. As said in Commonwealth v. Trent, 117 Ky., 34:

"Penal statutes must be construed as other statutes, with a view to carry out the intention of the Legislature. * * * The intention of the Legislature is to be collected from the words employed, but, in construing a statute, the court will look to the whole act, and the purpose of its makers in its enactment. The court cannot depart from the plain meaning of the words in a penal act, and adjudge that punishable under the statute which its language does not fairly cover. But, in determining what may be punished under the words of a statute, the court must apply the rule that every statute shall be construed literally, with a view to carry out the intention of the Legislature and promote its objects, taking all ordinary words and phrases according to the common and approved use of language."

The purpose of the statute in so far as it refers to opium and kindred drugs was to prevent, without a physician's prescription, their sale in small quantities to persons who intend to use them, not for medical or legitimate purposes, but to satisfy a depraved habit; and its purpose ought not to be weakened by an interpretation that would impair if not destroy its usefulness.

The word "retail" is defined by Webster to be "the sale of commodities in small quantities or parcels." This is the definition given by Bouvier in his law dictionary, and the one recognized as correct by law writers generally. 24 Cyc., page 1684; 24 Am. & Eng. Ency. of Law, page 875. There are few persons of ordinary intelligence who do not understand the meaning of the word "retail," or who would not be able to decide with reasonable certainty whether the sale of a given article or commodity was a sale by retail or wholesale. In the common

every day affairs of life people are constantly buying and selling things by wholesale and retail, and it would be absurd to say that a person who had intelligence enough to conduct a drug store did not know when he was selling a drug by retail, or did not know that the purchase of a small quantity of opium was a retail transaction; and there ought not to be any difficulty in the mind of a druggist in understanding the meaning of the words "legitimate purpose" as used in the statute. It is provided that the druggist who sells by retail without a prescription the poisons mentioned must first satisfy himself that it is for a legitimate purpose, and it is to be presumed that the druggist knows the legitimate purposes for which these poisons may be used; but if he does not know or has doubt about it, then he must in good faith exercise reasonable care to find out the purpose for which the drug or poison is bought.

The statute does not impose any harsh or unreasonable duty on druggists, because if the person desiring to purchase has not a prescription, the druggist can save himself from violating its provisions by in good faith exercising reasonable care to satisfy himself that it is intended for a legitimate purpose. But if he makes a sale by retail in the absence of a prescription, without first in good faith exercising reasonable care to satisfy himself that the purchaser intends to use the drug for a legitimate purpose, and it appears in the prosecution against him that the purchase was not made for a legitimate purpose, he subjects himself to the penalty denounced by the statute. In other words, whenever a druggist sells by retail the poisons mentioned, without being protected by the prescription of a physician, he takes the risk of violating the law, unless before making the sale he in good faith uses reasonable care to satisfy himself that it is intended for legitimate purposes. And whether or not this degree of care is used is a question of fact to be determined if put in issue from the evidence.

On the trial of this case a number of physicians were introduced for the Commonwealth for the purpose of showing that the sale of opium for smoking purposes or to an habitual user of the drug was not a sale for legitimate purposes. These physicians graphically described the ruinous effect of opium, physically, mentally and morally, when used habitually in any manner, and declared in emphatic terms the habit to be the most degrading and destructive that any person can acquire. Their testi-

many was objected to, but we think that in a prosecution under the statute, if the accused should make the defense that the sale of opium to a person for smoking purposes or who was an habitual user of the drug was legitimate, it would be competent to introduce as witnesses upon this point physicians or druggists to give an opinion whether or not the sale under the described circumstances and conditions was for a legitimate purpose. The statute was intended to regulate sales by druggists, and when it is sought to apply the words "legitimate purposes" to a sale of drugs or poisons by druggists, they have a technical meaning that may not be clearly known or understood by courts or jurors, and so it is permissible to allow experts to give evidence as to what is regarded by qualified druggists and physicians legitimate purposes for which sales may be made so that the trial court and jury may be informed as to what is recognized as a legitimate purpose for which these drugs may be sold by those entrusted with their sale, and to whom, in a measure, is confined the knowledge as to what constitutes a sale for legitimate purposes. When words are used in a penal statute that have both a popular and a trade or technical meaning, and as used in the statute they have reference to a trade or profession, these words in construing the statute should be given their meaning as understood by the trade or profession to which they apply. Lewis Sutherland on Statutory Construction, Vol. 2, Secs. 389-396. This is the rule given for the construction of statutes in section 460 of the Kentucky Statutes, providing in part that "All words and phrases shall be construed and understood according to the common and approved usage of language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such meaning."

The question is further suggested that the construction of words and phrases in a statute is usually for the court. Generally this is true. But, if it is shown by evidence that words and phrases are susceptible of two meanings, depending on the state of facts it is attempted to apply them to, the court may instruct the jury in the words of the statute and leave them to find from the evidence whether it has been violated. To illustrate, if there should be difference of opinion on the part of witnesses as to whether or not the sale being inquired into was made for a legitimate purpose, the court should leave

it to the jury to find the fact and make their verdict accordingly.

In reference to the criticism that the statute makes an arbitrary and unreasonable discrimination against retail dealers in drugs and in favor of wholesalers, it is sufficient to say that it was the evil of selling by retail that the Legislature intended to prohibit. If a wholesaler should sell by retail in violation of the statute, he would of course be liable to the same extent as would the retail dealer. But there is a reasonable and well defined distinction between the sale of goods by wholesale and by retail, and it was entirely competent for the Legislature in the exercise of the police power and to accomplish the purpose intended to make it a penalty to sell the prohibited article by retail, without mentioning its sale in wholesale quantities. The Legislature did not deem it necessary, in an effort to correct the evil following the illegitimate use of opium and other drugs to extend the law so as to embrace wholesale dealers. It is a well known fact that persons who purchase opium for illegitimate purposes as a rule obtain it in small quantities; and to place restrictions around its sale in the quantities in which it is usually obtained was the motive in the mind of the Legislature. It was dealing with a condition that existed. This legislation was not intended to reach or touch all persons or conditions, but only those that the law-makers in the exercise of their wisdom and discretion deemed it necessary to regulate for the safety and protection of the unfortunate class who have acquired the drug habit. If hereafter it becomes necessary to do so the Legislature may place such restrictions as are reasonably necessary around the sale of this or other drugs by wholesale, but the failure to do so in the act we are considering does not leave it open to the objection that it is discriminatory, arbitrary or unreasonable.

The classification made by the statute is a reasonable and natural one, and all persons within its scope are treated exactly alike. An offense is created and defined in appropriate words, capable of being understood and applied with reasonable certainty; and viewed from any standpoint the penalty imposed upon the appellant did not deprive him of his liberty or property without due process of law. The statute does not violate either the State or Federal Constitution, and as under the evi-

dence and agreed facts there can be no question as to appellant's guilt, the judgment of the lower court is affirmed.