## HOUSTON & T. C. RY. CO. v. STEVENSON.

### No. 1383—5556.

Commission of Appeals of Texas, Section A.
June 25, 1930.

Baker, Botts, Parker & Garwood, of Houston, and Garrett, Brownlee & Goldsmith, of Austin, for plaintiff in error.

E. R. York, Harris & Harris, S. L. Staples, and Cofer & Cofer, all of Austin, for defendant in error.

SHARP, J.

A. E. Stevenson instituted this suit in the district court of Travis county against the Houston & Texas Central Railroad Company for damages to his automobile and for personal injuries resulting from a collision between defendant's train and his automobile on a public road near Austin in Travis county. The case was submitted to the jury upon special issues. Based upon the findings of the jury to the special issues submitted, the trial court entered a judgment for the defendant. The case was appealed to the Court of Civil Appeals for the Third Supreme judicial district, and was reversed and remanded by that court. We refer to the opinion of that court for a more complete statement of the nature and result of the suit. 19 S.W.(2d) 207. A writ of error was granted.

We refer to the parties in this suit as plaintiff and defendant, as they were designated in the trial court.

By proper assignment of error the defendant contends that the Court of Civil Appeals erred in its decision in holding that article 799 of the Penal Code is void, in that it is so uncertain and indefinite as to its meaning that it violates article 1, § 10, of the Constitution of this state, and article 6 of the Penal Code, and therefore invalid, and that plaintiff, by operating his automobile without such brakes as required by said article, was not guilty of negligence as a matter of law, and that the finding of the jury that at the time and on the occasion in question he was operating his automobile without adequate brakes in good working order, and that such act was the proximate cause of the collision, was not sufficient to charge him with contributory negligence.

Article 799 of the Penal Code reads as follows: "Any person who operates upon a public highway a motor vehicle not provided with adequate brakes kept in good working order, or any person having control or charge of a motor vehicle who shall allow such vehicle to stand in any public street or highway unattended without first effectively setting the brakes and stopping the motor thereon, shall be fined not exceeding one hundred dollars."

The defendant alleged that plaintiff at the time of the collision was operating his automobile without any emergency brake, and that the service brakes were so worn out and defective as to be entirely useless, and he was unable to control his car, and in so operating his car he was guilty of negligence proximately causing the collision. The testimony tended to show that the automobile had no emergency brake at all, and that the service brakes were so worn as to be useless.

The court submitted to the jury the following special issues:

"Question No. 17: Was the plaintiff when approaching said railroad crossing operating his automobile without adequate brakes in good working order? Answer this question 'yes' or 'no.' " To which the jury answered: "Yes."

"Question No. 18: If you answer 'yes' to Question No. 17, then answer this question: Was the fact (if it was a fact) that plaintiff was operating his automobile without adequate brakes in good working order at the time of the accident the proximate·cause of or did it proximately contribute to cause the collision between plaintiff's automobile and defendant's train? Answer this question 'yes' or 'no.' " To which the jury answered: "Yes."

We think that the Court of Civil Appeals erred in holding that article 799, supra, is invalid. We are not convinced with the soundness of the reasons advanced for declaring the law invalid. The provision of the Penal Code in question was adopted by the Legislature in 1917, and evidently was a law to promote safety of travel on the highways. The subject-matter was clearly within the power of the Legislature, and the law is plain and unambiguous. The language embraced within the law is simple, and is commonly used in connection with such matters in controversy. The paramount purpose of the law was for the safety of the public from injury and loss of life through the operation of motor vehicles upon the highways of this country. Modern conditions require some such protection.

Let us review some of the authorities bearing upon this question and ·see if the validity of the statute in controversy does not find sanction and support in reason and in the able and well-reasoned opinions of the various courts upon similar laws, involving analagous principles.

The case of Galveston, H. & S. A. Ry. Co. v. Enderle (Tex. Civ. App.) 170 S. W. 276, 277 (writ of error denied), involved the construction of article 6713, Revised Statutes 1911, forbidding common carriers to use locomotives or cars not provided with sufficient and secure grabirons, handholds, and foot stirrups, and it was contended in that case, as here, that the act involved was invalid because it was so indefinite as to make it impossible from the language of the statute to ascertain the legislative intent of what would constitute compliance with the provisions of the statute. The Court of Civil Appeals in its opinion held:

"The article in question reads as follows:

" 'It shall be unlawful for any common carrier engaged in commerce as aforesaid, to use in moving intrastate traffic within said ·state any locomotive, tender, cars, or similar vehicle which is not provided with sufficient and secure grabirons, handholds and foot stirrups.'

"While the language is somewhat tautological and not specially marked with elegance, it seems to be plain and simple, and capable of being understood by any one who desires to understand it. The statute does not purport to provide the size, material, number, or style of the appliances mentioned, but it merely provides for such appliances as are 'sufficient and secure,' such, for instance, as will not give way and precipitate the servants of the corporation to the earth, as happened in this case. The law has often been enforced in this state, and railroad companies have not heretofore evinced any doubt as to the meaning and intent of the simple language in which the statute is couched. The statute was enacted to protect those who were called upon to use the appliances named, and it was not incumbent upon the Legislature to state that by the words 'sufficient and secure' it was meant that the appliances would not be safe unless they were strong enough to sustain the weight of the passenger or employee who might use them.

"Appellant insists that by the word, 'sufficient,' used in the statute it was intended to prescribe the number of appliances that should be used, but if that be true we fail to see what satisfaction appellant can obtain from that construction, because the appliances were to be both 'sufficient and secure,' and under the facts the handhold was certainly not secure, no matter how many of them may have been on the car. We are of opinion, however, that the word, 'sufficient' is used in the sense of adequacy and adaptation to the end desired. It means fitness to answer the purpose for which it was intended. It is not synonymous with 'secure,' which, as used in the statute, means safe. We can readily understand that a handhold might be perfectly secure and yet not be sufficient for the purposes·for which it is used. The words used in the statute are plain, and no difficulty can be experienced in. meeting the simple requirements of the statute. Language as general as that used in the statute under consideration has often been held valid. Berry v. State [Tex. Civ. App.] 135 S. W. 631; Waters-Pierce Oil Co. v. State, 48 Tex. Civ. App. 162, 106 S. W. 925; Katzman v. Commonwealth, 140 Ky. 124, 130 S. W. 990, 30 L. R. A. (N. S.) 519, 140 Am. St. Rep. 359; People v. Apfelbaum, 251 Ill. 18, 95 N. E. 995; State v. Railway, 177 Ind. 553, 96 N. E. 340 [Ann. Cas. 1914D, 1284].

"It must be kept in mind that this is a civil action, and that the rule of strict construction of the statute does not apply as in construing penal statutes. Even in construing that class of statutes, reason, conservatism, and common sense should be ex-

ercised and no statute lightly set aside and the sovereign will of the people thereby defeated. Every law enacted by the Legislature should be respected and never annulled by a court when the legislative will is expressed with reasonable certainty."

The case of State of Texas v. I. & G. N. Ry. Co., 107 Tex. 349, 179 S. W. 867, 869, involved the construction of articles 6581 and 6582, R. S. 1911, requiring railways to construct sheds for the shelter of its employees engaged in repairing cars, but exempting from its operation points where it is necessary to make "light repairs," and it was held by our Supreme Court that the law is not so indefinite in its application as to be inoperative and void for uncertainty. It was held that the term is one commonly used and as clear as could be used without attempting the difficult, if not impossible, task of making a catalogue of all repairs which might be considered light. Justice Yantis in rendering the opinion in that case, reviewed the opinion of Chief Justice Phillips in the case of State of Texas v. T. & P. Ry Co., 106 Tex. 20, 154 S. W. 1159, construing the "Water Closet Law" passed by the Thirty-First Legislature (c. 96), and says:

"What constitutes 'light repairs' in any stated line of industry should find little difficulty among those engaged in that particular line of employment. We think the statute in question is sufficiently definite for those affected by it to understand its meaning so as to know under what circumstances they would be transgressing its provisions. This is all that is or should be required.

"Several expressions used in the act of the Thirty-First Legislature, commonly known as the 'Water-Closet Law,' do not seem more certain than the term 'light repairs'; yet this statute has been sustained against the identical attack that is made upon the statute involved in the instant case. In the water-closet statute * * * which was penal in its nature, one of the requirements of the railroad companies was to keep' water-closets or privies in a 'reasonably clean and sanitary condition.' Another of its provisions was that said water-closets should be maintained 'either within its passenger depots, or in connection therewith, or within a reasonable and convenient distance therefrom.' Another was 'to keep said water-closets and depot grounds adjacent thereto well lighted at such hours in the nighttime as its passengers and patrons at such stations may have occasion to be at the same.'

"At a glance it is seen, and requires no argument to establish, that each of said provisions in the water-closet law contains no greater degree of certainty than the repair statute. The water-closet statute was by this court held to be suitable to the subject-matter of the act, and not violative of the Con-

stitution, or inoperative on account of uncertainty. In passing upon that case this court, speaking through Mr. Justice Phillips, clearly expressed the true rule, and the reason therefor, in the following language:

" 'Neither do we regard the act inoperative or violative of either the federal or state Constitution because of any vagueness or uncertainty in its terms. A requirement that the water-closets be kept in a reasonably clean and sanitary condition, that they be located within a reasonable * * * distance from the passenger depots, or be kept in connection therewith, and that they be kept well lighted, presents no difficulty to the understanding, and should present none in its observance. Its terms are suitable to the subject-matter of the act; and, having regard for the difference in conditions at the stations upon railway lines where it is made operative, the use of more specific language would very probably have provided only an arbitrary and impracticable rule.' State of Texas v. T. & P. Ry. Co., 106 Tex. 20, 154 S. W. 1159."

The case of Solan & Billings v. Pasche (Tex. Civ. App.) 153 S. W. 673, 674, (writ of error denied) involved the construction of section 3 of chapter 96, Acts of the Thirtieth Legislature, page 193, which provided: "No person in charge of an automobile or motor vehicle on any public road, street or driveway shall drive the same at any speed greater than is reasonable and proper, having regard to the traffic and use of the public road, street or driveway by others, or so as to endanger the life or limb of any person thereon."

In that case it was contended that the section of law quoted was unconstitutional and could not be enforced as a penal statute because it was so vague and indefinite that it was not susceptible of enforcement as such. The court in its opinion held: "It is unnecessary to determine whether or not the statute is subject to the particular objection urged, as it was at least sufficient as a remedial statute imposing a civil duty so as to render its violation negligence per se."

The case of Baltimore & Ohio R. R. v. Interstate Commerce Commission, 221 U. S. 612, 31 S. Ct. 621, 625, 55 L. Ed. 878, involved the construction of the act of March 4, 1907, c. 2939, 34 Stat. 145 (45 USCA § 61 et seq.) regulating the hours of labor of railway employees, and it was contended in that case, as here, that the act was so uncertain that it was invalid. The Supreme Court of the United States, in meeting this contention in its opinion, said: "It is said that the words, 'except in case of emergency,' make the application of the act so uncertain as to destroy its validity. But this argument in substance denies to the legislature the power to use a generic description, and, if pressed to its logi-

cal conclusion, would practically nullify the legislative authority by making it essential that legislation should define, without the use of generic terms, all the specific instances to be brought within it. In a legal sense there is no uncertainty. Congress, by an appropriate description of an exceptional class, has established a standard with respect to which cases that arise must be adjudged."

Recently this section of the commission passed upon the validity of articles 790 and 794 of the Penal Code, regulating the rate of speed of persons operating or driving motor vehicles upon public highways, and we held in the case of West Texas Coaches, Inc., v. Masota Madi et al., 26 S.W.(2d) 199, that the foregoing articles were valid in so far as they were sufficient to furnish a rule of civil conduct.

See the following authorities: Commonwealth v. Pentz, 247 Mass. 500, 143 N. E. 322; Hayes v. State, 11 Ga. App. 371, 75 S. E. 523; Quarles v. Gem Plumbing Co., 18 Ga. App. 592, 90 S. E. 92; Strickland v. Whatley, 142 Ga. 802, 83 S. E. 856; Nash v. United States, 229 U. S. 373, 33 S. Ct. 373, 57 L. Ed. 1232; Commonwealth v. Mathues, 210 Pa. 372, 59 A. 961; Nagle v. City of Billings, 77 Mont. 205, 250 P. 445.

What constitutes "adequate brakes kept in good working order," as applied to the operation of a motor vehicle upon a highway in this state, should not be difficult to understand. We think the terms used in the statute in question are easily understood by those who are to be governed by its provisions. This is all that should be required to meet the test of its validity.

The expressions used in articles 6581 and 6582, R. S. (1911), above cited, with reference to "light repairs" by railway companies, and the expressions used in the act of the Thirty-First Legislature, known as the "Water-Closet Law," do not seem more certain or definite than the term "adequate brakes." The water-closet statute was penal in its nature just as article 799 under consideration is penal in its nature.

In the enactment of the statute in controversy, the Legislature did not fix a rule so rigid that its enforcement would be arbitrary and impracticable. It requires only that which is fair and reasonable under all the circumstances. The law is elastic, and the terms used are suitable to the subject-matter of the act. Whether or not a person is guilty of operating a motor vehicle not provided with "adequate brakes kept in good working order," upon a public highway, is a question of fact, to be left to the determination of the jury under all the evidence. In our opinion, article 799 is valid in so far as it furnishes a rule of civil conduct.

■ By proper assignment the plaintiff complains of the refusal of the trial court to submit to the jury the issue of discovered peril. In answers to special issues submitted, the jury found the defendant guilty of negligence and the plaintiff guilty of contributory negligence. Upon this feature of the case the Court of Civil Appeals found the following facts: "Discovered peril was pleaded by appellant and questions presenting that issue requested by him to be submitted to the jury. We think the evidence was sufficient to take the issue to the jury. The jury found that the whistle was blown and the bell rung as required by law as the train approached the crossing. It is manifest, we think, that neither the appellant, nor the negro who was riding with him heard either warning. Appellant's car was running downhill at the crossing. Testimony differed as to its speed. The fireman testified that he saw the automobile some 100 or 125 feet from the crossing just as the engine entered the cattle guard at the edge of the road; that the car was coming at a high rate of speed; and that he gave the emergency stop signal to the engineer, who immediately applied the brakes, bringing the train to a stop at about 175 feet beyond the crossing. There was evidence that appellant did not see the train until he was much closer to the track than when the fireman had first seen him; that he then turned his automobile to the right seeking to avoid the collision and struck the water tank some 38 feet from the front of the engine. The fireman gave no signal to the engineer to blow the whistle, nor did he attempt to do so himself, after he discovered appellant's approach. The futility of the signal he did give (to stop the train), under the circumstances, was demonstrated by the fact that it was impossible to stop the train before the impact. Had the whistle been blown immediately upon the discovery by the fireman of appellant's position, appellant might have sooner discovered the presence of the train, and might have turned his car sufficiently to have avoided the collision, or have jumped from it in time to have avoided personal injuries to himself."

Upon the law applicable to this issue in the case, the Court of Civil Appeals says: "The test is whether, after the discovery of such perilous position, the operators of the train, which is of necessity unable to change its course or stop immediately have acted as men of ordinary prudence would have acted under the circumstances, and have used all the means at their command consistent with the safety of the train to avoid the collision. In the instant case, the effort to stop the train was manifestly useless. Whether or not the whistle could or should, in exercise of ordinary prudence, after the fireman discovered appellant's approach, have been blown in time to have apprised him of the presence of the train sooner than he discovered it otherwise, and whether such warn-

ing would have averted the collision, was, we think, a matter that should have been submitted to the jury. Houston, E. & W. T. Ry. Co. v. Kopinitsch, 114 Tex. 367, 268 S. W. 923; Sanches v. Ry. Co., 88 Tex. 117, 30 S. W. 431; Missouri, K. & T. Ry. Co. v. Reynolds, 103 Tex. 31, 122 S. W. 531; St. Louis Southwestern R. Co. v. Inman (Tex. Civ. App.) 293 S. W. 651; Northern Traction Co. v. Weed (Tex. Com. App.) 300 S. W. 42; Houston, E. & W. T. Ry. Co. v. Sherman (Tex. Civ. App.) 10 S.W.(2d) 243."

In the case of Missouri, K. & T. Ry. Co. v. Reynolds, 103 Tex. 31, 122 S. W. 531, 532, Judge Williams, in rendering the opinion of the Supreme Court in that case, in passing upon the question of discovered peril, says: "What the law requires is the exercise of the care to avoid injury which persons of ordinary prudence would use in such emergencies. This care must, of course, be proportioned to the danger, but what acts and expedients constitute it in a given situation is a question to be determined by the jury, and not by the court. San Antonio & A. P. Ry. Co. v. Hodges, 102 Tex. 524, 120 S. W. 848; 2 Thompson on Neg. § 1734, 1738."

Again he says: "The most complete diligence to stop an engine while under some conditions constituting all that could be expected might under others be less than the full performance of the duty to exercise the care of an ordinarily prudent person. In some situations warnings and other expedients are more effectual than any effort to stop would be. Sanches v. San Antonio & A. P. Ry. Co., 88, Tex. 120, 30 S. W. 431."

In the case of Houston & T. C. Ry. Co. v. Finn, 101 Tex. 511, 109 S. W. 918, which involved the question of whether the evidence presented the issue of discovered peril, as one of fact for a jury, Chief Justice Gaines, in rendering the opinion of the Supreme Court, says: "Being now of the opinion that there was some evidence to justify the jury in finding that the servants of the company discovered that the plaintiff was about to go into a place where he would be in danger of being struck by the cars, in time to have avoided the injury by means within their power, we deem it a profitless task to discuss the question."

See Trochta v. M., K. & T. Ry. Co. (Tex. Com. App.) 218 S. W. 1038.

The testimony in this case raising the issue of discovered peril on the part of the operatives of the engine and train with which plaintiff collided with his automobile is very meager, but, in view of the foregoing authorities and this entire record, we think the Court of Civil Appeals correctly held that the issue of discovered peril should have been submitted to the jury.

Since this case will be reversed and remanded, we think it proper to state that, when plaintiff pleads and relies for recovery upon specific acts of negligence on the part of the defendant, and the case is submitted to the jury upon special issues, it is proper to instruct the jury as to those acts of negligence so charged and relied upon that the burden is upon the plaintiff to establish them by a preponderance of the evidence. When the defendant challenges the right of plaintiff to recover by reason of certain exceptions, and that by virtue of certain exceptions there is no liability on the part of the defendant, and special issues based upon such exceptions are submitted to the jury upon such special issues, it is proper to instruct the jury that the burden is upon the defendant to establish them by a preponderance of the evidence.

In view of the fact that this case will be reversed and remanded for a new trial, we will forego a discussion of the other questions raised, some of which are discussed in the opinion of the Court of Civil Appeals, because they will not likely arise upon another trial. For the reasons herein stated we recommend that the judgment of the Court of Civil Appeals reversing and remanding this case for a new trial be affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.