## TEXAS EMPLOYERS' INS. ASS'N v. WOLFE et al.

### No. 11120.

Court of Civil Appeals of Texas. Dallas.
Jan. 30, 1932.

Rehearing Denied March 12, 1932.

Lawther, Cox & Cramer, of Dallas, for appellant.

White & Yarborough, of Dallas, for appellees.

## VAUGHAN, J.

Appellee Wolfe instituted this suit in a district court of Dallas county to set aside an award of the Industrial Accident Board of Texas, made and entered August 5, 1930, allowing said appellee compensation for 100 weeks at the rate of $20 per week on account of certain injuries alleged to have been sustained by him as an employee of the Dallas Transfer & Terminal Warehouse Company (to be hereinafter referred to as warehouse company), and while in the course of said employment on April 14, 1930, and to recover judgment for total and permanent disability in a lump sum against appellant as the insurer of said appellee against accidental injuries resulting in total and permanent disability, etc., to the employees of the warehouse company. Appellant answered with general demurrer and general denial.

Upon the jury's answers to the special issues submitted, the trial court, on July 2, 1931, rendered judgment in favor of appellee and against appellant for the sum of $6,804.-09 in a lump sum with 6 per cent. interest thereon from date of judgment, and of said sum awarded to the appellees John White and H. J. Yarborough, the attorneys representing appellee Wolfe, the sum of $2,268.03, against said appellee and appellant; and further, the award, final ruling, and decision of the Industrial Accident Board of Texas rendered herein August 5, 1930, was in all things vacated and set aside. From the answers made by the jury to the special issues submitted by the trial court, the following material facts were found to have been established by the evidence, viz.: That appellee Wolfe sustained personal injuries on April 14, 1930; was an employee of the Warehouse company; that while in the course of his said employment he sustained total incapacity on said date; that said incapacity naturally resulted from the injuries so sustained by him; that said total incapacity will be permanent; that the payment of compensation to said appellee by appellant in weekly installments will result in a manifest hardship and injustice to appellee; that appellant, Industrial Accident Board, and the warehouse company, each received notice of the injuries sustained by appellee, on April 14, 1930, within 30 days after said date; that appellee made claim for compensation upon the appellant for his injuries within six months after April 14, 1930, and that within said period of time he filed claim for compensation for his injuries with the Industrial Accident Board; that appellee worked in the employment in which he was engaged at the time of his injuries in question for substantially the whole of the year immediately preceding April 14, 1930; that the average daily wage or salary earned by appellee per day during the days when so employed covering the year immediately preceding April 14, 1930, was $10; that the average daily wage or salary which an employee of the same class as appellee, working substantially the whole of the year, immediately preceding April 14, 1930, in the same or similar employment to that of appellee, in the same or in a neighboring place to that in which appellee was working when he sustained the injuries in question, earned in such employment during the days when so employed $10 per day; that said warehouse company, or its foreman, H. A. McCain, had control of appellee so as to be able to direct all of the details of the carrying out of the work that appellee was doing at the time of his injuries. Said findings of fact being amply supported by the evidence are adopted as part of our findings of material facts.

In view of the fact that appellant, in its brief, only questions the sufficiency of the evidence to sustain the judgment in two material respects, viz.: (a) That the evidence considered as a whole did not establish that appellee Wolfe was, at the time he sustained his injuries, an employee of the warehouse company, but, to the contrary, established that at said time he was an employee of the Mosler Safe Company and not appellant's subscriber; and (b) that all of the evidence established that appellee was doing the work, not of an iron worker, at the time he sustained the injuries in question, but of an employee engaged in the moving or transfer business—we are only called upon to review the statement of facts in these respects.

We have carefully examined the testimony of the witnesses bearing upon the above contentions and find the following facts to have been established without conflict, viz.: (a) That said warehouse company had a contract to move the vault door and lining to be used in constructing said vault, not only to the sidewalk in front of the First National Bank Building, but into the basement of said building, and in position, including placing said

door before the opening of the vault to be there properly swung by the employees of the Mosler Safe Company; that appellee was a structural iron worker at the time of his injury and had been for about ten years prior thereto engaged in that work; that he had been employed by, and was an employee of, said warehouse company at the time his injury was received, and was working under one P. J. Kain, foreman, employed by said warehouse company to superintend the moving of said lining and door from the sidewalk to its proper position, and he was compensated therefor by said warehouse company; that said warehouse company paid appellee Wolfe for his work that he had performed for it before and was performing for it at the time he was injured; that appellee Wolfe took orders from said Kain, as foreman; (b) that said warehouse company employed structural iron workers to move the lining and door to be used in constructing said vault from the sidewalk to the basement of said bank building, and to place same in position, which included the vault door which appellee Wolfe was assisting to move into position before the vault opening; that the technical work of erecting said vault was being done by Mosler Safe Company, and the warehouse company was engaged in transporting and moving the vault door and lining to the opening of the vault where the door was to be hung by said safe company; that the regular employees of said warehouse company moved the lining and vault door onto the sidewalk in front of the bank building; that said material was then taken charge of by Union iron workers, employed by said warehouse company for that purpose; that they had lowered said lining and door into the basement and were to move same to proper position in front of the vault opening; that at the time of appellee's injury, the vault door was about one and one-half lengths from said opening and being moved toward it; that structural iron workers received a wage of $1.25 per hour working eight hours per day and 5½ days per week; that appellee received, for the services rendered by him under his employment by said warehouse company, the same compensation and worked under the same terms as if he had been doing the technical work required to construct said vault.

The above facts, we think, completely refute appellant's contentions (a) and (b); therefore its proposition Nos. 1 to 9, inclusive, upon which said contentions are based, are overruled.

It is true that appellee Wolfe was not engaged to do, or was doing when injured, what is termed technical structural iron work, in that he was not employed to assemble in proper position and permanently fasten the component parts of the material that would complete the contract for the construction of said vault. However, appellee's work was so germane to and correlated with such technical work as to come within the realm of service usually performed by a structural iron worker. Therefore, it cannot be said that appellee was employed to perform, and was performing at the time he sustained his injuries, work so disassociated from the ordinary duties of a structural iron worker, performing the services necessary to construct said vault, that same was not to be classified as structural iron work.

Appellant, by its tenth, eleventh, and twelfth propositions, respectively, contends that the trial court erred in holding that the jury's affirmative answers to each of the following special issues was not against the great weight of the evidence so much so as to permit same to stand, would result in manifest hardship and injustice, viz.:

"No. 2. Do you find and believe from a preponderance of the evidence that the plaintiff, G. W. Wolfe, was an employee of the Dallas Transfer & Terminal Warehouse Company at the time he sustained the personal injuries, if any, on April 14, 1930? Answer: 'Yes.'

"No. 2a. Do you find and believe from a preponderance of the evidence that plaintiff, G. W. Wolfe, sustained the personal injuries complained of, if any, on April 14, 1930, while in the course of his employment with the Dallas Transfer & Terminal Warehouse Company? Answer: 'Yes.' "

"No. 20. Do you find and believe from a preponderance of the evidence that the Dallas Transfer & Terminal Warehouse Company, or its foreman, H. A. McCain, had control over G. W. Wolfe, so as to be able to direct all the details of the carrying out of the work the said G. W. Wolfe was doing at the time of his injury, if any? Answer: 'Yes.' "

We think said answers were made under and in conformity with the greater weight of the evidence as, in our judgment, was demonstrated from a careful survey and just appraisal of the probative effect of all the evidence introduced bearing upon said issues, as reflected by the material facts found by this court to have been established thereby.

■ Appellant, by its propositions Nos. 13 to 17, inclusive, challenges the sufficiency of special issues Nos. 2, 2a, 5, and 20, because the court refused to give in connection with each one of said issues the following charges requested by appellant, viz.: "The burden of proof is upon the plaintiff, G. W. Wolfe, to establish the affirmative of special issue No. ——— by a preponderance of the evidence and if he has failed to so prove such issue, you will answer the same with 'No,' " same having been properly requested, the special charge so requested as to each one of said issues containing in the blank space the

number of the issue in reference to which said special charge was requested. Each of said issues contains the following instruction as to the burden of proof: "Do you find and believe from a preponderance of the evidence that," followed by the issues to be considered, and answered, no other charge on the burden of the proof was given by the court other than the following contained in the general charge, viz.: "This case is submitted to you upon the following special issues which you will answer from a preponderance of the evidence; that is, the greater weight and degree of credible testimony before you without regard to the effect your answers may have upon the judgment in this case."

Under the holding of this court in the case of Texas Employers' Insurance Association v. Adcock, 27 S.W.(2d) 363, the court properly refused to give said special charges. Appellant relies upon the admonition contained in the case of Houston & T. C. Ry. Co. v. Stevenson, 29 S.W.(2d) 995, 999, by the Commission of Appeals (which was not approved by the Supreme Court), in reference to instructing a jury upon the burden of proof, viz.: "Since this case will be reversed and remanded, we think it proper to state that, when plaintiff pleads and relies for recovery upon specific acts of negligence on the part of the defendant, and the case is submitted to the jury upon special issues, it is proper to instruct the jury as to those acts of negligence so charged and relied upon that the burden is upon the plaintiff to establish them by a preponderance of the evidence."

Appellant also cites as authority the case of Commercial Standard Insurance Co. v. McGee (Tex. Civ. App.) 40 S.W.(2d) 1105, in which the above holding in Railway Co. v. Stevenson, supra, together with other decisions, holding pro and con, therein cited were discussed, with the result that this court, in view of said direction contained in said Stevenson Case, made the following observation: "Therefore, we think it well that trial courts observe the rule as stated in the Stevenson case." In the case of Federal Surety Company v. Smith, 41 S.W.(2d) 210, 214, opinion by the Commission of Appeals, the following observation was made upon the matter under discussion, viz.: "In view of the frequency with which we are called upon to determine the correctness of the form of special issues, we desire to suggest that the least objectionable method of procedure is for the trial court to propound the question to be submitted in the form, 'Do you find from a preponderance of the evidence that' (following with the question to be determined), so framing the question, upon each issue, as to place the burden of proof where it properly belongs."

The holdings in this opinion, on the questions discussed, were approved by the Supreme Court. The closing paragraph of the above quotation still leaves the question raised by appellant's propositions in a state of uncertainty and doubt, unless the language "as to place the burden of proof where it properly belongs," as applied to this case, has reference to, and only means, that in so far as appellee Wolfe, as plaintiff, pleaded and relied upon for recovery specific acts of negligence on the part of the warehouse company, or appellant, the trial court should have instructed the jury as to such acts of negligence that the burden of proof was upon appellee to establish them by a preponderance of the evidence; accepting this as being the proper interpretation and application of the suggestion in Surety Co. v. Smith, supra, we overrule appellant's propositions under discussion, on the ground that neither of said requested charges was in reference to any specific act of negligence on the part of said warehouse company, or appellant, pleaded and relied upon by appellee for recovery.

We have carefully considered all of the propositions not specially discussed, and finding no reversible error presented by any one of said propositions, same are overruled; it is therefore ordered that the judgment of the trial court be, and the same is hereby, in all things affirmed.

Affirmed.

On Appellant's Motion for Rehearing.

In considering appellant's motion for rehearing, we find that, in order to properly answer appellant's challenge that findings of fact by this court in the original opinion are not supported by evidence, it will be necessary to quote the evidence on which this court acted. Ground No. 52 of said motion' criticizes the findings of fact made by this court as follows: "Your Honors erred wherein it is held, 'that the regular employees of said Warehouse Company moved the lining and vault door on to the sidewalk in front of the bank building; that said material was then taken charge of by Union iron workers, employed by said Warehouse Company for that purpose; that they had lowered said lining and door into the basement and were to move same to proper position in front of the vault opening; that at the time of appellee's injury, the vault door was about one and one-half lengths from said opening and being moved toward it.' "

The following testimony was the basis for the above holding, namely: R. C. Daubitz, witness for appellees, testified as follows:

That he was an iron worker and had been so engaged for fifteen years; that he had known appellee Wolfe for ten years; that he was an iron worker and had worked with him on several jobs doing iron work; that at the time appellee was injured he was working in the basement of the First National

Bank Building; that he (Daubitz) was working for the Mosler Safe Company putting up armor plates on the vault being built in said basement of the Bank Building, and appellee was working for the Dallas Transfer & Terminal Warehouse Company at that time; that all the iron work on the building of the safe (vault) was Mosler Safe Company's work; that the armor plates were being put up on the inside of the walls.

"Q. How long had it been since Mr. Wolfe had been in there doing that kind of work? A. Well, he had been in there working with us in there, but at that particular time that they moved that door back, which was the Dallas Transfer & Terminal Warehouse Company's job to move this door back —and they employed union men.

"Q. Was G. W. Wolfe working for the same people that you were on— A. No sir, he was not, he was working for the Dallas Transfer & Terminal Warehouse Company at that time. That the hours put in for the Safe Company were paid by the Mosler Safe Company and the hours that were put in for the Transfer Company were paid for by that Company; the Transfer Company merely moving stuff in there and the iron-workers installed and put it up, did that work.

"Q. Is it not true Mr. Daubitz that the Transfer Company wanted to use their men to move this stuff in, that is move it from the Railroad Company down to the basement, don't you know that they had some trouble with the Union? A. They had.

"Q. That the Union wanted Union men to do the work inside of the building? A. We had some trouble, I don't know what the outcome was, but they put the Union men to work there.

"Q. Now when the Transfer Company put stuff on the sidewalk then they had nothing more to do with it there—the Union men took charge of it and handled it from then on? A. Yes sir."

P. J. Kain, a witness for appellee, testified as follows:

That he was a structural iron worker, had worked as foreman on one job for the Dallas Transfer & Terminal Warehouse Company, namely, the safe job in the First National Bank, putting steel down in the hold (meaning basement) where appellee was working under him at the time he was hurt.

"Q. Were you present there when Mr. Wolfe was hurt? A. Yes sir.

"Q. Tell just what occurred there? A. Well, that morning, we started back with the door on rollers; is a narrow place; just little bit more than enough room for the door to get in there; had to go back through that hall, then, turn around there and get in line; then, go back and turn the door again; then, straighten it up to go into the vault—about 50 feet to where the door went—opening, and we were just about, I would say, length or length and a half of the door being in its place when one of the rollers began to get cross-ways and wouldn't 'track'—just where got to do that set jack to straighten the roller up—place the weight on the jack—we got it up on the jack; place something under the jack; we could not use the jack on the tile floor; we set it on the jack to be straightened and to release the roller to straighten it; Wolfe reached down in there to straighten the roller and, just at that time, the teeth in bottom of these jacks—got the crippled jack and jack moved a little bit—just as he went to step out of there it crushed him against the wall.

"Q. Who instructed him to do that work? A. I was; I was in charge.

"Q. Who hired you to take charge of that work—with reference to the Dallas Transfer & Terminal Warehouse Company? A. I was hired right there through the Mosler people to take charge of the setting work that came on the inside there; the Transfer Company was to carry it to the sidewalk.

"Q. What were the duties of the Dallas Transfer & Terminal Warehouse Company— what part of that work were they to do and what part of the work were they doing? A. They were to distribute it to its place; that part of it; was to take it and put it inside; inside the vault—for the steel—and the door was to be put in front of the opening; then, it was turned over there for erection by the Mosler Safe People."

That the Dallas Transfer & Terminal Warehouse Company paid him for his work as foreman over the Union employees working under him; that he was working for them there direct.

"The Court: How do you know, Mr. Kain? A. Well, I know that we had work and got our money from them, and know got orders, which would have to do where end of their work was distributing iron and putting it in piles and the door; when Wolfe went to go with the door and put it in front of the opening—

"The Court: How do you know? Was Wolfe working for the same people? A. He was working in my 'gang' there with four (4) men and myself working there and all working direct for those people—Dallas Transfer & Terminal Warehouse Company.

"Q. And none of the Dallas Transfer & Terminal Warehouse Company's regular employees doing this work ever came any closer to this work than the sidewalk? A. Not after we straightened it.

"Q. Not a fact that regular employees, under that agreement, should place it on the sidewalk? A. It was in the contract what they were to do.

"Q. The first part of the work the Dallas Transfer & Terminal Warehouse Company was bringing the material down into the basement, was it not? A. Yes sir.

"Q. Did the Dallas Transfer Company right from the start use Union men to bring that stuff from the sidewalk down into the basement? A. No sir, there was a little argument."

Witness further stated:

"Our International has agreement with the Mosler People that their work shall be done by Union workers, however, when came here, and Transfer Company knew that when they started to deliver that iron and bring it back in place, and, when brought attention to it, there was a certain change came on right there—attention was brought it; after had straightened out I got to work in there.

"Q. What are the facts as to whether or not you were told by Mr. McCain where to put this stuff? A. Yes, sir, told by him, and had to go in front of the opening where we were moving it to place the door within a length and a half or two lengths of itself up there at the time Wolfe was injured.

"Q. Where were you to move it to (referring to the door)? A. From the sidewalk down to a little hall and took it down the hall-way, had to go around two corners.

"Q. And going to what place? A. Then straighten out and go into where the opening of the vault door.

"Q. How much distance? A. About length and a half of itself."

We think the above testimony sufficient to demonstrate that this court did not err in making the fact statement as claimed by appellant's counsel; by this we do not mean to say that there was no evidence in support of said claim, or to criticize counsel for presenting same. We have carefully considered all other grounds of the motion, and it not being made to appear thereby that we should recede from and hold contrary to the disposition made of appellant's appeal, said motion is therefore refused.