# Richmond

## ERNEST COLLINS V. CITY OF NORFOLK.

March 3, 1947.

Record No. 3163.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*Breeden & Hoffman,* for the plaintiff in error.

*Jonathan W. Old, Jr., Donald W. Shriver* and *M. T. Bohannan,* for the defendant in error.

HOLT, C. J., delivered the opinion of the court.

There were two of these cases—companion cases—arising out of the same incident. In one the State charged Collins with assault; in the other, he is charged with disorderly conduct. In the record in the first case is all of the evidence taken at the hearing of these cases. In the latter case, which is the case now before us, a somewhat detailed analysis of the testimony appears in the brief of the defendant, Collins, and of the plaintiff, the City of Norfolk. It appears that a warrant was sworn out by A. J. Blue, charging Ernest Collins with disorderly conduct in violation of an ordinance of the City of Norfolk. Collins was tried before a police justice and fined $25.00. He appealed to the Corporation Court of the city of Norfolk. A jury was impaneled, he was found guilty and again assessed with a $25.00 fine.

In the State's warrant charging Collins with assault, the same jury found the "defendant guilty and set peace bond at $100.00 to expire Oct. 5th, 1946." To that judgment a writ of error issued also.

From briefs filed, this appears as a background for this litigation:

On October 6, 1945, Ernest Collins, the defendant, was one of a number of employees, who were then on a strike, engaged in certain construction for the Norfolk & Western Railway.

One of the approaches at the point at which they worked was along what is known as the Armistead Bridge Road. Across this road a car had been placed by these strikers. On that occasion two cars, in which rode three strike-breakers and A. J. Blue, a superintendent of construction,

came to a point on this Armistead Bridge Road where their approach was challenged by the ·strikers. In one of these cars rode a strike-breaker named McCoy. Collins came up, caught him by the shirt collar, then put his arm around his neck and tried to pull him out of the car. Unsuccessful in this, he approached the car in which Blue was riding and said: "You son of a bitch, we are going to get you. You won't stay in Norfolk always."

Thereupon these two cars containing the strike-breakers withdrew without getting to their destination and were followed by a striker's car, in which Collins rode, for a distance of something like five miles to the Naval Base.

Since the evidence is not before us, we may assume, and do assume, that the jury and court were justified in finding the accused guilty of disorderly conduct.

Disorderly conduct is thus dealt with by an ordinance of the City of Norfolk:

"Sec. 818. Disorderly Conduct. Any person who shall within the limits of the city, be guilty of disorderly conduct, other than that set forth in other sections of this chapter, shall upon conviction· thereof, be fined not less than one dollar nor more than fifty dollars."

For the defendant it is said:

"The effect of this ordinance is to attempt to make 'disorderly conduct' which was not an offense at common law, an offense without defining the prohibited act so as to supply the standard by which the guilt of the accused person is to be determined.

"That 'disorderly conduct' was not an offense at common law is too well settled to be argued here; see *Lewis* v. *Commonwealth*, 184 Va. 69, 34 S. E. (2d) 389, which quotes briefly from Encyclopedia Criminal Law, Vol. 3, Par. 1319, as follows:

" 'Disorderly conduct—As a crime. Disorderly conduct is not, *eo nomine*, an offense at common law, and hence is not punishable as a separate and distinct crime unless made so by statute or ordinance, * * * '."

Disorderly conduct is not a common law offense. *Lewis*

v. *Commonwealth*, 184 Va. 69, 34 S. E. (2d) 389; 17 Am. Jur. 99. The English law on that subject was consolidated in 5 George IV, chap. 83. It is now generally used in statutes and more particularly in municipal ordinances to designate certain minor offenses.

In the *Lewis Case,* we were called upon to construe Code, section 4533, and said that disorderly conduct is not a crime in Virginia unless made so by ordinance or by statute.

In *Standard Oil Co.* v. *Commonwealth*, 131 Va. 830, 109 S. E. 316, Judge Prentis quoted this with approval from *Katzman* v. *Commonwealth*, 140 Ky. 124, 130 S. W. 990, 30 L. R. A. (N. S.) 519, 140 Am. St. Rep. 359:

" * * * There are numerous statutes in existence creating and describing offenses, the enforcement of which often brings into prominent notice a question concerning the meaning of words in the law about which different persons might reach a different conclusion. In the trial of many criminal cases there are, of necessity, submitted to the jury issues involving the meaning of certain words upon which depends the guilt or innocence of the accused; and with the court, or jury, as the case may be, is left the decision whether or not the law under which the prosecution is pending has been violated. It would, of course, be extremely desirable if every penal statute could be made so plain as not to leave any doubt as to its meaning, and so intelligible as that every person could, by reading it, at once decide what he might with safety do under it. But this ideal condition is not attainable. It would not be at all practicable to define in every statute the meaning of controlling words in it that there may be difference of opinion concerning, when it is attempted to apply them to a given state of facts. To do this would extend to unreasonable length almost every statute that creates and describes an offense, * * * ."

In 27 C. J. S. 278, the rule is thus stated:

" * * * It is obviously impossible in a statute or ordinance to specify and particularize all of the acts which would constitute disorderly conduct, and for this reason in

some jurisdictions the statutes define disorderly conduct as any such conduct as in the opinion of the magistrate tends to a breach of the peace; and even in the absence of such a statutory definition it is generally a question for the magistrate whether or not the particular act complained of is comprehended within the expression 'disorderly conduct.' From this it follows that the question as to whether a particular act is disorderly conduct depends largely on the facts in the particular case, and in the determination of such question not only the nature of the particular act should be considered but also the time and place of its occurrence as well as all the surrounding circumstances," citing many cases.

■ One can no more undertake to define comprehensively "disorderly conduct" than he can misdemeanors, nuisances, police power, or insulting words. Each case turns upon its facts, to be judicially determined.

While disorderly conduct, *eo nomine*, is not an offense at common law, it is everywhere denounced both by statute and by municipal ordinances, as appears in unnumbered cases in every decennial digest. It is perfectly true that sometimes certain acts are described as disorderly, but, as we have seen, such descriptions are sporadic and not meant to be inclusive.

Appellant relies strongly upon *People* v. *Keeper of State Reformatory for Women*, 38 Misc. 233, 77 N. Y. S. 145, where it is said:

"The mere phrase 'disorderly conduct' standing alone does not state any fixed or definite criminal act, which is absolutely required in the definition of a criminal offense, in order that people may know it is a criminal offense and avoid the commission of it. It may be construed to mean anything a policeman or magistrate chooses. As I have said before in *In re Newkirk*, 37 Misc. 404, 75 N. Y. S. 777, * * * ."

In that case a prostitute under the charge of disorderly conduct was committed to prison for a three-year term.

In a somewhat extended discussion of this subject in *People* v. *Kaufman*, 165 Misc. 670, 1 N. Y. S. (2d) 362, it is said:

"The latest pronouncement by the appellate courts on this

point is in *People* v. *Collins*, 238 App. Div. 592, at page 594, 265 N. Y. S. 475, 477, where Presiding Justice Martin stated: 'Disorderly conduct as defined by section 722 of the Penal Law and sections 1458 and 1459 of the New York City Consolidation Act (Laws of 1882, c. 410) is not a crime, but an offense of which a city magistrate has summary jurisdiction to hear and determine. (Penal Law, sec. 724; * * * .)' "

It thus appears that even in New York magistrates may hear and determine cases of disorderly conduct without any formal charge at all.

█ We find no error in the record. The judgment is affirmed.

*Affirmed.*