## Norfolk

DIANE KEYES

v.

CITY OF VIRGINIA BEACH

No. 0286-92-1

Decided April 6, 1993

COUNSEL

(Diane Keyes, on briefs), pro se.

(L. Steven Emmett, Assistant City Attorney, on brief), for appellee.

Opinion

**BRAY, J.**—Diane Keyes (defendant) was convicted of "disorderly conduct" in violation of Virginia Beach City Code § 23-14. She contends on appeal that the evidence was insufficient to support her conviction. We disagree and affirm the decision of the trial court.

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). The judgment of a trial court, sitting without a jury, is entitled to the same weight as a jury verdict and will be disturbed only if plainly wrong or without evidence to support it. *Id.* The credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the factfinder's determination. *Long v. Commonwealth*, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).

The evidence disclosed that, on January 21, 1991 at approximately 10:45 p.m., Officer H. E. Fawley, Jr. (Fawley) "stopped" defendant for a traffic infraction as she "pulled up into the driveway" of her "babysitter's house." At Fawley's request, defendant took a seat in the police vehicle while he prepared a summons. She complained that she was "late," "in a hurry," noted that her husband was a "military policeman" and asked Fawley to "just cut her a break." Although Fawley refused her request, he did permit defendant to "go . . . explain to [the babysitter] that [she was] going to be a couple of minutes . . . and come back."

Upon her return, defendant again questioned Fawley's intentions and he confirmed that he was "still issuing . . . a summons." Defendant then announced that she was "going to get [her] baby," "jumped out of the car" and "started walking fast towards the house." In response, Fawley exited his vehicle and ordered her "back to [his] car," "at which time . . . she put her hands down . . . balled her fists . . . straightened up" and "just started screaming at [him]." When Fawley cautioned defendant that he was "going to place [her] under arrest for disorderly conduct" if she did not "calm down," she protested, "you ain't going to do nothing to me" and demanded the presence of a "real policeman," "screaming the whole time." Thinking that defendant "was going to fight," Fawley arrested her for the subject offense.

Police Officer Ronald S. Dunn (Dunn), on vehicular patrol "several blocks away" at the time of the incident, testified that he "heard a woman screaming," investigated and found defendant "screaming at the location where . . . Fawley had her stopped." Dunn recalled that defendant was "very boisterous," causing "a whole lot of commotion," claiming that the officers were "breaking her bones," "brutalizing her," and "screaming . . . that she wanted a real cop."

■ Virginia Beach City Code § 23-14 provides that a "person is guilty of disorderly conduct . . . if, with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) In any street, highway, . . . or while . . . in a public place, engages in conduct having a direct tendency to cause acts of violence by the person . . . at whom, individually, such conduct is directed . . . ." *See* Code § 18.2-415. The "question as to whether a particular act is disorderly conduct depends largely on the facts in the particular case, and in the determination of such question not only the nature of the particular act should be considered but also the time and place of its occurrence as well as all the surrounding circumstances." *Collins v. City of Norfolk*, 186 Va. 1, 5, 41 S.E.2d 448, 450 (1947).

Defendant's argument that the City failed to prove the requisite elements of the offense ignores both the circumstances and the plain language of the ordinance. Defendant defied the police officer's order to remain seated in his automobile while he prepared the traffic summons, "jumped out," and became loud and uncooperative, refusing to "calm down." Such willful, intemperate and provocative conduct, in response to proper law enforcement activity, audible for several blocks and visible from a public street, clearly evinced the intent or recklessness contemplated by the ordinance. Because Fawley reasonably "felt as though [he] was going to have to fight" to subdue defendant, her behavior had "a direct tendency to cause acts of violence by the person . . . at whom [it was] directed." *See Burgess v. City of Virginia Beach*, 9 Va. App. 163, 167-68, 385 S.E.2d 59, 61 (1989).

Defendant's assertion that the incident did not occur "in a public place," but in "a driveway" on "private property," is also without merit. The trial judge, "[r]esolving the conflict in the evidence," made a specific factual finding that the fracas "occurred in a public place." This conclusion finds ample support in the record.

Accordingly, the judgment of the trial court is affirmed.

*Affirmed.*

Willis, J., concurred.

Elder, J., dissenting.

I respectfully disagree with the majority's conclusion as to the sufficiency of the evidence in this case. The Virginia Beach City Code section at issue, § 23-14, tracks the language of Virginia Code § 18.2-415. The City Code proscribes only "conduct having a direct tendency to cause acts of violence by the person . . . at whom, individually, such conduct is directed." In addition, it expressly states that "the conduct prohibited under [this section] shall not be deemed to include the utterance or display of any words." After excluding appellant's loud statements as required by the statute, the remaining evidence simply does not support the conclusion that appellant's behavior had a direct tendency to incite Officer Fawley to violence.

Officer Fawley testified that, while he was attempting to write appellant a summons, she jumped out of his police car and screamed at him. He also testified that she verbally resisted his efforts to issue her a traffic summons by continuing to scream, even after he warned her that he would arrest her for disorderly conduct if she did not calm down. When she refused to comply, Fawley placed her under arrest. Officer Dunn then arrived on the scene and held appellant's arms "lightly [behind] her back." He testified that "there was no need for any force because she wasn't offering any kind of resistance . . .[, although] she was still screaming as loud as she could . . . ." Although Officer Fawley testified that he "felt as though [he] was going to have to fight" to subdue appellant, he admitted that "[s]he didn't fight." He also testified that he personally was "very calm the whole time." Both officers testified that appellant never threatened to use force against them and never offered any physical resistance other than getting out of Fawley's car with the stated purpose of getting her baby out of the house. In addition, appellant did not attempt to flee the scene and did not resist when Officer Dunn held her arms lightly behind her back. Even viewed in the light most favorable to the Commonwealth, the evidence in this case is insufficient to show that appellant's behavior, excluding her words as we must under the statute, had a direct tendency to cause violence. I would reverse and dismiss.