COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Willis and Bray
Argued at Norfolk, Virginia


DAVID V. BOND
                                    MEMORANDUM OPINION[*] BY
v.          Record No. 1263-96-1    JUDGE JERE M. H. WILLIS, JR.
                                            APRIL 1, 1997
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                    Christopher W. Hutton, Judge

            Lawrence A. Martin (Coyle & Martin, on
            brief), for appellant.

            Linwood T. Wells, Jr., Assistant Attorney
            General (James S. Gilmore, III, Attorney
            General, on brief), for appellee.



        David V. Bond was convicted in a bench trial of possession

of a controlled substance.  On appeal, he contends that the trial

court erred in refusing to suppress evidence seized pursuant to

his unlawful arrest for disorderly conduct.  We find that the

evidence is sufficient to support a finding that the officer had

probable cause to arrest Bond for disorderly conduct, and affirm

the judgment of the trial court.

        In an appeal of a ruling on a motion to suppress, the

appellant has the burden to demonstrate that, viewing the

evidence in the light most favorable to the Commonwealth, the

trial court's decision constituted reversible error.  Fore v.

Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980).  As

_____

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

a general matter, determinations of reasonable suspicion and probable cause are reviewed de novo; however, we review the trial court's findings of historical fact only for clear error, and impart due weight to inferences derived from those facts by resident judges and local law enforcement officials. James v. Commonwealth, 22 Va. App. 740, 743, 473 S.E.2d 90, 91 (1996) (citing Ornelas v. United States, 116 S. Ct. 1657 (1996)).

On September 17, 1995, Frank Thompson drove Bond to his apartment complex. As they approached the complex, they could see a crowd of people and several police cars near Bond's apartment. Thompson testified that Bond got out of the car, and that someone approached Bond and told him that his son had been involved in a fracas and had been assaulted.

Thompson testified that Bond became upset and moved toward the crowd. As he did so, a police officer told him to "be quiet." Bond began pacing back and forth, "stating his displeasure in what had occurred with his son." Thompson testified that Bond was a "pretty animated person" with a louder than normal voice.

Officer Anthony Coleson testified that he received a radio dispatch concerning a report of child abuse at the apartment complex. When he arrived at the complex, he encountered a crowd of approximately ten to fifteen people, including Bond who was "very loud in an animated [sic] walking toward the apartments, towards the crowd." Officer Coleson characterized Bond as being

"extremely loud," and said "[s]ome people may describe it as yelling."

Officer Coleson repeatedly told Bond to lower his voice and to calm down. Each time Officer Coleson told Bond to keep his voice down, Bond would continue yelling. Officer Coleson then told Bond that he needed either to keep his voice down or to go inside his apartment. Bond agreed to go inside, and began walking toward his door. However, he continued yelling at an individual later determined to be his son. Officer Coleson arrested Bond for disorderly conduct. Pursuant to the arrest, the police searched Bond and found heroin.

> Hampton City Code § 24-12 provides, in pertinent part, that:
> A person is guilty of disorderly conduct
> . . . if, with the intent to cause public
> inconvenience, annoyance or alarm, or
> recklessly creating a risk thereof, he:
>
> (1) [W]hile in or on a public conveyance
> or public place, engages in conduct having a
> direct tendency to cause acts of violence by
> the person or persons at whom, individually,
> such conduct is directed; provided, however,
> such conduct shall not be deemed to include
> the utterance or display of any word or to
> include conduct otherwise punishable under
> other provisions of this chapter . . . .

Bond contends that his actions fell short of conduct having a direct tendency to cause acts of violence by the person at whom they were directed. Clearly, words alone are not enough to support a conviction for disorderly conduct. The city ordinance requires proof of conduct tending to precipitate violent activity, directed toward an individual or identifiable group.

Cf. Code § 18.2-415.

"The 'question as to whether a particular act is disorderly conduct depends largely on the facts in the particular case, and in the determination of such question not only the nature of the particular act should be considered but also the time and place of its occurrence as well as all the surrounding circumstances.'" Keyes v. City of Virginia Beach, 16 Va. App. 198, 200, 428 S.E.2d 766, 767 (1993) (quoting Collins v. City of Norfolk, 186 Va. 1, 5, 41 S.E.2d 448, 450 (1947)).

We need not determine whether Bond's conduct did in fact constitute disorderly conduct under the ordinance. Rather, we review the evidence to determine whether the facts and circumstances within Officer Coleson's knowledge at the time of the warrantless arrest were sufficient to constitute probable cause that the offense had been committed. See Ford v. City of Newport News, 23 Va. App. 137, 143-44, 474 S.E.2d 848, 851 (1996).

The facts and circumstances known to Officer Coleson would lead a reasonable person to conclude that Bond's actions, directed to the crowd in general, and to his son in particular, would tend to lead to violence. Cf. Ford, 23 Va. App. at 144, 474 S.E.2d at 851 (concluding that defendant's lack of civility directed toward police officers could in no reasonable way cause or incite the officers to violence). Officer Coleson arrived at the apartment complex in response to a possible case of child

abuse, a crime that inflames passions.  Even with the windows rolled up in his police cruiser, he immediately heard Bond "yelling."  A crowd of upset and turbulent people had assembled. Officer Coleson testified that:  "through my experience, when you have a large crowd of individuals out there, people yelling, there is always a potential of some type of violence."  Despite repeated requests by Officer Coleson to calm down, Bond failed to comply and continued to yell at an individual only later determined to be his son.

Bond's conduct and behavior, the presence of a large crowd and the report of child abuse gave Officer Coleson probable cause to arrest Bond.  Because the after-discovered heroin was the fruit of a lawful search incident to that arrest, the trial court did not abuse its discretion in denying Bond's motion to suppress the evidence.

Accordingly, the judgment of the trial court is affirmed.

<u>Affirmed.</u>