Tuesday          20th

        March, 2001.


Steven Joseph Jolinski,                                    Appellant,

  against        Record No. 2083-99-3
                 Circuit Court No. CR99011269

Commonwealth of Virginia,                                  Appellee.


                    Upon a Rehearing En Banc

      Before Chief Judge Fitzpatrick, Judges Benton, Willis,
    Elder, Bray, Annunziata, Bumgardner, Frank, Humphreys and
                          Clements*

            S. Jane Chittom, Appellate Counsel (Elwood
            Earl Sanders, Jr., Appellate Defender;
            Public Defender Commission, on brief), for
            appellant.

            Linwood T. Wells, Jr., Assistant Attorney
            General (Mark L. Earley, Attorney General,
            on brief), for appellee.


        By unpublished opinion, a divided panel of this Court

affirmed the appellant's conviction in charge CR99011269.  Jolinski

v. Commonwealth, Record No. 2083-99-3 (Va. Ct. App. June 20, 2000).

We stayed the mandate of that decision and granted rehearing en banc.

        Upon a rehearing en banc, the stay of the mandate is

lifted, and the judgment of the trial court is affirmed in accordance

with the majority panel opinion.

        Judges Benton, Elder and Annunziata dissent for the reasons

set forth in the panel dissent.

The Commonwealth shall recover of the appellant the costs in this Court, which costs shall include an additional fee of $200 for services rendered by the Public Defender on the rehearing portion of this appeal, in addition to counsel's necessary direct out-of-pocket expenses, and the costs in the trial court. This amount shall be added to the costs due the Commonwealth in the June 20, 2000 mandate.

This order shall be certified to the trial court.

---

* Judge Agee did not participate in the consideration or decision of this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

-

Present:  Judges Elder, Bray and Bumgardner
Argued at Richmond, Virginia


STEVEN JOSEPH JOLINSKI

v.    Record No. 2083-99-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE RUDOLPH BUMGARDNER, III
JUNE 20, 2000

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
Richard S. Miller, Judge

S. Jane Chittom, Appellate Counsel (Elwood Earl
Sanders, Jr., Appellate Defender; Public Defender
Commission, on brief), for appellant.

Linwood T. Wells, Jr., Assistant Attorney General
(Mark L. Earley, Attorney General, on brief), for
appellee.


Steven Joseph Jolinski challenges the sufficiency of the
evidence supporting his conviction for disorderly conduct in
violation of Code § 18.2-415.[1]  Finding no error, we affirm.

We view the evidence in the light most favorable to the
Commonwealth and grant to it all reasonable inferences fairly
deducible from it.  See Archer v. Commonwealth, 26 Va. App. 1, 11,

---

[*] Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

[1] "A person is guilty of disorderly conduct if, with the intent
to cause public inconvenience, annoyance or alarm, or recklessly
creating a risk thereof, he . . . engages in conduct having a direct
tendency to cause acts of violence by the person or persons at whom,
individually, such conduct is directed" in a public place.  Code §
18.2-415(A).

-

492 S.E.2d 826, 831 (1997).  Off-duty police officer B.P. Balmer was working as a uniformed security guard for Cattle Annie's, a bar and restaurant, during its annual band festival.  Balmer was responsible for patrolling the streets surrounding the bar and monitoring the "traffic and the flow of people in and out."  Balmer was across the street from the bar when another security guard approached him, pointed to the defendant, and stated that he had been ejected for "some sort of ABC violation."

The defendant approached Balmer and asked, "[w]ho can I talk to?"  Balmer asked what he needed, and while the defendant looked at the officers, he began cursing and yelling.  He yelled, "I don't understand what the fuck is going on," and indicated that he had been kicked off the property, had traveled a long way, was with his friends, and didn't understand why they were "doing this to him." The defendant took out his wallet and asked Balmer, "[w]hat do I have to pay you to let me back in?"  Balmer asked if he was offering a bribe.  The defendant responded, "Hell, yeah, whatever the fuck I have to do to get back in."

Balmer advised the defendant that he would be arrested for the way he was acting.  The defendant "started waving his arms around and yelling" as a crowd gathered.  Based on his experience as a police officer, Balmer felt the defendant "might have been ready to want to fight."  He felt the defendant's "general demeanor" and behavior was "activity consistent with somebody being ready to be combative." Balmer arrested the defendant who resisted by struggling and cursing.

-

The defendant testified he was not upset and that it was Balmer who was argumentative and would not let him get a word in edgewise. The defendant said he was trying to leave freely and voluntarily but acknowledged he approached Balmer to find out how to get back inside the bar. The defendant denied swearing or offering a bribe to regain entrance to the bar and claimed he was cooperative the entire time.

The trial court found that the defendant's "conduct in waving his arms and gesturing was done recklessly and did create a risk that the persons at whom it was directed, that is, the police officers and anybody else in the area, might have caused acts of violence by those persons as set forth in Subsection A of [Code § 18.2-415]." It convicted him of disorderly conduct. The defendant argues the evidence was insufficient to show that his conduct had the tendency to cause Balmer to act violently because none of his abusive language was directed at Balmer and he made no lunging moves toward anyone.

In Keyes v. City of Virginia Beach, 16 Va. App. 198, 428 S.E.2d 766 (1993), an officer stopped Keyes in her babysitter's driveway at 10:45 p.m. for a traffic infraction. Keyes told the officer she was running late, was in a hurry, that her husband was a military policeman, and asked him to "just cut her a break." Id. at 199, 428 S.E.2d at 767. The officer permitted her to inform her babysitter that she would be delayed a few minutes. When the defendant returned to the police car, she asked what the officer was doing. When he replied that he was still issuing a summons, she stated that she was

-

going to get her child and started walking fast to the house. The officer ordered her to return to the cruiser.

Keyes "put her hands down . . . balled her fists . . . straightened up" and "just started screaming" at the officer. The officer told her that he would arrest her for disorderly conduct if she did not calm down. The defendant said, "you ain't going to do nothing to me," and demanded the presence of a "real policeman," "screaming the entire time." Id. The officer arrested her because he believed she "was going to fight." An officer, who arrived to assist, testified the defendant was screaming, "very boisterous," and causing a big commotion. Id. at 200, 428 S.E.2d at 767.

In affirming Keyes's convictions, this Court ruled that "[s]uch willful, intemperate and provocative conduct, in response to proper law enforcement activity, audible for several blocks and visible from a public street, clearly evinced the intent or recklessness contemplated" by the disorderly conduct ordinance. Id. at 200, 428 S.E.2d at 768. Because the officer "reasonably 'felt as though [he] was going to have to fight' to subdue defendant, her behavior had 'a direct tendency to cause acts of violence by the person . . . at whom [it was] directed.'" Id. (citation omitted).

In this case, Balmer was working security at a bar, lawfully performing his duties to keep the peace when the defendant approached him. The defendant was upset about being ejected from the bar. The defendant got louder and abusive, and attracted a crowd. When the officer warned the defendant he would be arrested for that behavior,

-

the defendant started waving his arms around and continued yelling. Believing that the defendant was in the beginning stages of combative behavior and that he wanted to fight, the officer arrested the defendant. It was reasonable to infer from those facts that the defendant was not going to stop causing a scene until he was permitted to re-enter the premises, which he was not entitled to do.

The defendant relies on Ford v. City of Newport News, 23 Va. App. 137, 474 S.E.2d 848 (1996). In Ford, an officer asked a man pushing a bicycle to come over. The defendant complied and became loud and boisterous, and waved his arms in the air. "Although the defendant was loud, profane and uncivil, the officers had no basis to conclude, on these facts, that they would be required to use physical force to restrain the defendant in order to carry out their duties." Id. at 145, 474 S.E.2d at 852 (citation omitted).

The difference between Ford and Keyes is whether the officers had reason to conclude they would need to use physical force. In Ford he did not; in Keyes he did. In this case, the abusive language was similar to that in Ford, but it was coupled with evidence that the defendant had reached the initial stages of combative behavior and wanted to fight. That additional fact brings it within the holding of Keyes.

"'[T]he question as to whether a particular act is disorderly conduct depends largely on the facts in the particular case, and in the determination of such question not only the nature of the particular act should be considered but also the time and place of

-

its occurrence as well as all the surrounding circumstances.'"
Collins v. City of Norfolk, 186 Va. 1, 5, 41 S.E.2d 448, 450 (1947)
(quoting 27 C.J.S. 278).  The trial court found that the defendant's
conduct was directed at both Balmer and the crowd and that the
conduct created a risk of violence by them.  The evidence supported
those findings, and it was reasonable for Balmer to believe that the
defendant was not going to cease this behavior until he regained
entrance into the bar, engaged in a fight, or was arrested.  The
statute proscribes this type of conduct and permitted the arrest
before any outbreak of violence.  Accordingly, we affirm the
conviction for disorderly conduct.

                                                        Affirmed.

                                    -

Elder, J., dissenting.

I would hold the outcome of this case is controlled by Ford v. City of Newport News, 23 Va. App. 137, 143, 474 S.E.2d 848, 850-51 (1996), and is distinguishable from Keyes v. City of Virginia Beach, 16 Va. App. 198, 428 S.E.2d 766 (1993), relied on by the majority to affirm appellant's conviction.  As a result, I would conclude the evidence is insufficient to support appellant's disorderly conduct conviction and would reverse.  Therefore, I respectfully dissent.

Code § 18.2-415 provides in relevant part as follows:

> A person is guilty of disorderly conduct if, with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
> A.  In any street, highway, . . . or public place engages in conduct having a direct tendency to cause acts of violence by the person or persons at whom, individually, such conduct is directed;
>
> *      *      *      *      *      *      *
>
> However, the conduct prohibited under subdivision A . . . shall not be deemed to include the utterance or display of any words or to include conduct otherwise made punishable under this title.

"The requirement that the defendant's actions or behavior . . . must have a 'direct tendency to cause acts of violence' is dictated by concern for First Amendment free speech protections."  Ford, 23 Va. App. at 143, 474 S.E.2d at 850-51.

> [T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.  "Speech is often provocative and challenging. . . .  [But it] is nevertheless protected against censorship or punishment,

-

> unless shown likely to produce a clear and
> present danger of a serious substantive evil that
> rises far above public inconvenience, annoyance
> or unrest."

Id. at 143, 474 S.E.2d at 851 (quoting City of Houston v. Hill, 482 U.S. 451, 461, 107 S. Ct. 2502, 2509, 96 L. Ed. 2d 398 (1987) (quoting Terminiello v. City of Chicago, 337 U.S. 1, 4, 69 S. Ct. 894, 896, 93 L. Ed. 1131 (1949))).

Whether the acts have a tendency to cause violence in the person or persons at whom they were directed requires an objective analysis--whether the conduct of the accused would provoke a reasonable person to violence. See Mercer v. Winston, 214 Va. 281, 284, 199 S.E.2d 724, 726 (1973) (interpreting former Code § 18.1-255, now Code § 18.2-416, which prohibits the use of abusive language); Burgess v. City of Va. Beach, 9 Va. App. 163, 167-68, 385 S.E.2d 59, 61 (1989) (holding that police officers are not subject to a higher standard of restraint). "[W]hether a particular act is disorderly conduct depends largely on the facts in the particular case, and in the determination of such question not only the nature of the particular act should be considered but also the time and place of its occurrence as well as all the surrounding circumstances." Collins v. City of Norfolk, 186 Va. 1, 5, 41 S.E.2d 448, 450 (1947).

I would hold the outcome of this case is controlled by our ruling in Ford, 23 Va. App. 137, 474 S.E.2d 848. Here, as in Ford, the evidence was insufficient as a matter of law to establish that appellant's conduct, excluding his statements as we must under the

-

statute, had a direct tendency to cause violence by the people at whom it was directed.

Ford involved a consensual encounter between two uniformed police officers and a bicyclist, which occurred at about 9:00 p.m. in a "known high crime area." Id. at 141-42, 474 S.E.2d at 850. When the officers asked the bicyclist "to come over to [them]," he "immediately became loud, angry, and uncooperative." Id. at 141, 474 S.E.2d at 850. He cursed at the officers, saying, "I'm tired of this shit. The cops in Hampton do the same shit, and I'm not going to put up with it anymore." Id. The defendant also "threw 'his arms about in the air.'" Id. His actions were "so loud and boisterous" that nearby apartment dwellers and officers in a training class heard the commotion and offered assistance to the two officers. Id. Appellant did not cease his behavior and was arrested for disorderly conduct. See id.

In reversing Ford's conviction, we held as follows:

> Officer Nowak did not have reason to believe that the defendant's conduct would provoke a violent response from the person or persons at whom such conduct was directed, which is a requisite element of [disorderly conduct]. The words uttered by the defendant, however offensive or rude, do not establish disorderly conduct. Although Officer Nowak testified that the defendant "[threw] his arms about in the air" and was "loud and boisterous," he made no threatening remarks, uttered no words that would reasonably incite a breach of the peace, [and] made no threatening movements toward the officers. While the defendant's remarks lacked civility and were impolite, loud, and persistent protestations about his treatment, his act of throwing his arms in the air could in no reasonable way cause or

-

> incite the officers to violence. There is simply
> no evidence in the record to support a reasonable
> belief that the defendant's conduct would cause a
> reasonable officer to respond with physical force
> or violence or that the officers considered the
> defendant's throwing his arms in the air to be an
> assault.

Id. at 144, 474 S.E.2d at 851.

Here, like in Ford, appellant's words may have been offensive or rude, but they did not establish disorderly conduct. Although appellant waved his arms in the air and Balmer thought "he might have been ready to want to fight," Balmer admitted that appellant "didn't actually make any assaulting movements toward" Balmer or anyone else and did not threaten any of the officers or even call them names. Although appellant's actions may have begun to draw a crowd, no evidence establishes that appellant threatened the crowd or directed his anger at them, and the mere presence of others at the scene did not convert appellant's behavior into disorderly conduct. The accused in Ford was so loud that nearby apartment dwellers and police officers in a training class responded and offered assistance to the two officers on the scene, indicating their implicit belief that Ford's conduct may have posed some sort of threat, but we nevertheless held the evidence was insufficient to find Ford guilty of disorderly conduct. Finally, in appellant's case, the trial court held merely that appellant's conduct "might have caused acts of violence" (emphasis added) by those at whom it was directed, whereas the statute requires proof that the conduct had "a direct tendency to cause acts of violence" by those at whom it was directed. Code

-

§ 18.2-415 (emphasis added). Under the circumstances in appellant's case, I would hold the trial court erred in convicting appellant of disorderly conduct.

Unlike the majority, I would hold this case is distinguishable from, rather than controlled by, our ruling in Keyes, 16 Va. App. 198, 428 S.E.2d 766. In Keyes, a police officer stopped the accused for a traffic infraction, and she attempted to leave his police car before he had finished writing the ticket. See id. at 199, 428 S.E.2d at 767. When he ordered her back to the car, she "balled her fists[,] . . . straightened up" and "started screaming at [him]." Id. When he warned her that he would arrest her for disorderly conduct if she did not calm down, she continued to scream, saying "you ain't going to do nothing to me." Id. The arresting officer testified that he thought the accused "was going to fight," and he placed her under arrest for disorderly conduct. Id. In affirming the conviction, we emphasized that the accused refused to cooperate with an officer engaged in the lawful performance of his duties-- issuing a traffic summons. See id. at 200, 428 S.E.2d at 768. We found reasonable the officer's belief, based on his description of the accused's behavior, that he thought he was "going to have to fight" to subdue her, thereby establishing that her behavior had "a direct tendency to cause acts of violence by the person . . . at whom [it was] directed." Id.

Here, in contrast to Keyes, Officer Balmer was engaged in a consensual encounter with appellant when appellant became disruptive,

-

an encounter from which Balmer could have attempted to remove himself without abdicating his duty.  Appellant made no assaultive moves toward Balmer or anyone else, and Balmer testified merely that he "felt like [appellant] was going to get in the beginning phases of getting into a combative nature" and "might have been ready to want to fight."  Unlike the officer in Keyes, Balmer did not testify that he thought he was going to have to fight appellant.  Balmer was not compelled by duty to continue the encounter with appellant.  Under the facts set out above, I believe the evidence was insufficient as a matter of law to establish that appellant's conduct had a direct tendency to cause violence by the people at whom it was directed.

For these reasons, I would find Ford controlling and Keyes distinguishable.  Because I believe the evidence failed to establish that appellant's conduct had a direct tendency to cause violence by Officer Balmer or anyone else at the scene, I would reverse and dismiss appellant's conviction.