COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Kelsey and McClanahan
Argued at Richmond, Virginia


KIANA TONYE BROWN

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0365-04-2                JUDGE D. ARTHUR KELSEY
                                                       FEBRUARY 8, 2005

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Lee A. Harris, Jr., Judge

David G. Hubbard (WallacePledger, PLLC, on brief), for appellant.

Deana A. Malek, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


A jury convicted Kiana T. Brown for disorderly conduct, one count of misdemeanor battery, and another count of felony battery of a law enforcement officer. On appeal, Brown challenges both the legality of her arrest and the sufficiency of the evidence supporting her convictions. Finding no error on either subject, we affirm.

I.

We review the evidence in the "light most favorable" to the Commonwealth, the prevailing party in the trial court. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). In practical terms, this means we "must 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and *all fair inferences to be drawn therefrom*.'" Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (citation omitted and emphasis in original).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Following an argument with her boyfriend, Brown called the police at midnight seeking an officer's aid in retrieving her belongings from his apartment. Moments later Officer Joseph Burton responded to the request, known in police parlance as a call for a "domestic escort." Burton went to the boyfriend's apartment on the second floor, after first directing Brown to wait on the ground level. Burton then instructed Brown's boyfriend to put her belongings outside his front door.

Angry that Officer Burton would not let her into the apartment, Brown became "very upset." As her boyfriend was putting the last of her belongings in the hall, Brown walked up the stairs and tried to get into the apartment. Burton ordered her to go back downstairs. When she refused to comply, Burton escorted her back to the ground level. She walked to the other side of the adjacent roadway and appeared to make a cell-phone call.

Burton returned to the second-floor apartment. After confirming that Brown's belongings had been moved into the hallway, Brown's boyfriend returned to his apartment and closed the door. Burton went downstairs and called out to Brown to retrieve her things from the hallway. "Fuck you," Brown replied. As Burton walked across the roadway to Brown, she continued to shout profanities at him. Brown then "stated that if I came close enough to her," Burton testified, "that she would punch me."

Having been threatened with an assault in a public place, Burton advised Brown she was under arrest for disorderly conduct. As he attempted to take her into custody, Brown punched him in the mouth. Another officer just arriving on the scene, Barry Thompson, witnessed the assault. As Burton and Thompson attempted to take Brown into custody, Brown continued "kicking, flailing around, just trying to get away" from both officers. She twice kicked Thompson in the neck and twice spit in his face.

At trial, Brown denied nearly all of the officers' testimony. She said Burton did not escort her from the second to the first floor. He never called out to her to pick up her belongings. She

never said, "Fuck you," to Officer Burton or to anyone else that night. At no time did she ever "threaten to hit him in any way." Nor did Burton ever inform her she was under arrest. Instead, Brown testified, Burton simply walked up to her and without any explanation grabbed her hand, prompting her to ask three times: "Officer Burton, can you please let go of me so we can handle this in a respectful, mannerable way." Brown said she then "kind of, at that point, put [her] hand up" near his face, but "never did punch him or anything." Nor did she ever hit, kick, or spit on Officer Thompson, though she did volunteer that "saliva had came out [sic] of my mouth" at some point during the struggle.

A jury found Brown guilty of disorderly conduct, Code § 18.2-415(A), felony battery of Officer Burton, Code § 18.2-57(C), and misdemeanor battery of Officer Thompson, Code § 18.2-57(A).

## II.

On appeal, Brown challenges the sufficiency of the evidence supporting her disorderly conduct conviction. She also claims both battery convictions must be vacated because she had a right to resist the illegal arrest and, in any event, she merely responded to excessive force used by the officers while making the arrest. We disagree with each of these assertions.

### A. DISORDERLY CONDUCT

When reviewing the sufficiency of a jury verdict, we "let the decision stand unless we conclude no rational juror could have reached that decision." Pease v. Commonwealth, 39 Va. App. 342, 355, 573 S.E.2d 272, 278 (2002) (*en banc*), aff'd, 266 Va. 397, 588 S.E.2d 149 (2003) (*per curiam*). This understanding of the standard of review recognizes the responsibility of the trier of fact to weigh the evidence and resolve conflicting testimony. Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*).

- 3 -

The jury found Brown guilty of disorderly conduct. Under Code § 18.2-415(A), a person is guilty of disorderly conduct "if, with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: [publicly] . . . engages in conduct having a direct tendency to cause acts of violence by the person or persons at whom, individually, such conduct is directed . . . ." Applied to disorder directed at police officers, the statute criminalizes words or conduct that "would cause a reasonable officer to respond with physical force or violence" to preempt the anticipated assault or to subdue the would-be assaulter. Ford v. City of Newport News, 23 Va. App. 137, 144, 474 S.E.2d 848, 851 (1996) (interpreting analogous ordinance); see also Mannix v. Commonwealth, 31 Va. App. 271, 280, 522 S.E.2d 885, 889 (2000); Keyes v. Virginia Beach, 16 Va. App. 198, 200, 428 S.E.2d 766, 768 (1993).

In this case, Brown threatened to assault Officer Burton as soon as he came within striking distance. A rational jury could conclude this threat constituted disorderly conduct under Code § 18.2-415(A). Officer Burton could not simply walk away. He found himself in the middle of a domestic quarrel taking place just after midnight in a public apartment complex. Brown's conduct — screaming profanities, demanding to enter her boyfriend's apartment against his will, refusing to collect her belongings and leave, threatening a police officer — evidenced a disintegrating situation requiring the continued intervention of Officer Burton.

Though Brown disputed all of this evidence at trial, the jury was at liberty to disbelieve her "self-serving explanation" as a mere effort at "lying to conceal [her] guilt." Commonwealth v. Duncan, 267 Va. 377, 385, 593 S.E.2d 210, 215 (2004); Haskins v. Commonwealth, 44 Va. App. 1, 10, 602 S.E.2d 402, 406 (2004). This principle naturally follows from the broader observation that "whenever a witness testifies, his or her credibility becomes an issue." Hughes v. Commonwealth, 39 Va. App. 448, 462, 573 S.E.2d 324, 330 (2002) (citation omitted).

## B. BATTERY OF POLICE OFFICERS

Brown seeks to defeat her two battery convictions by challenging the legality of her arrest for disorderly conduct, claiming that Officer Burton did not have probable cause to arrest her. She then reasons that her alleged post-arrest conduct (punching, kicking, hitting, and spitting) should be characterized, as a matter of law, as a reasonable response to an illegal arrest. See Commonwealth v. Hill, 264 Va. 541, 546, 570 S.E.2d 805, 808 (2002) ("Under the common law, a citizen generally is permitted to use reasonable force to resist an illegal arrest."). Brown also argues that, even if her arrest were legal, she still had a right to fight back in response to the officers' use of excessive force. See generally McCracken v. Commonwealth, 39 Va. App. 254, 262, 572 S.E.2d 493, 497 (2002) (*en banc*) (acknowledging that even a "lawful arrest, when made with unlawful force, may be resisted" with reasonable force).

We agree with both legal premises upon which Brown relies, but disagree that either of them applies to the facts of this case.

### (i) *Probable Cause & The Legality Of The Arrest*

Probable cause "as the very name implies, deals with probabilities." Slayton v. Commonwealth, 41 Va. App. 101, 105-06, 582 S.E.2d 448, 450 (2003) (citation omitted). It does not "demand any showing that such a belief be correct or more likely true than false." Id. at 106, 582 S.E.2d at 450 (quoting Texas v. Brown, 460 U.S. 730, 742 (1983)). Nor need the facts be "sufficient to convict" the accused of the offense. Id. at 107, 582 S.E.2d at 451 (citations omitted). "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the probable-cause decision." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (citation and internal brackets omitted).

Practically speaking, this means "reasonable law officers need not resolve every doubt about a suspect's guilt before probable cause is established." Slayton, 41 Va. App. at 107, 582 S.E.2d at 451 (citations and internal quotation marks omitted). Instead, the probable cause standard requires only that the prosecution "show a probability or substantial chance of criminal activity, not an actual showing of such activity." Ford, 23 Va. App. at 143-44, 474 S.E.2d at 851 (citation and internal quotation marks omitted).

In this case, a jury found Brown's threat constituted disorderly conduct under Code § 18.2-415(A). We have upheld that decision as reasonable. Those two conclusions more than answer any concerns over probable cause. For if no reasonable doubt exists on the issue, then probable cause (a far lower standard) must necessarily be present. The latter, no less than the former, depends entirely on an objective assessment of the facts. See Devenpeck v. Alford, 125 S. Ct. 588, 593 (2004) (holding that "arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause"); Slayton, 41 Va. App. at 106, 582 S.E.2d at 450. In this respect, the "only difference between facts needed to establish probable cause and those needed to prove guilt beyond a reasonable doubt is in the degree or quantum of proof, not in the facts or elements of the offense." Ford, 23 Va. App. at 144, 474 S.E.2d at 851 (citation omitted).

Because Burton had probable cause to arrest Brown for disorderly conduct, she had no right to use force to resist the lawful arrest. See McCracken, 39 Va. App. at 262, 572 S.E.2d at 497; Smith v. Commonwealth, 30 Va. App. 737, 743, 519 S.E.2d 831, 833 (1999); Brown v. Commonwealth, 27 Va. App. 111, 116-17, 497 S.E.2d 527, 529-30 (1998); Polk v. Commonwealth, 4 Va. App. 590, 596, 358 S.E.2d 770, 773 (1987).

(ii) *Excessive Force – Reasonable Self-Defense*

Under common law, excessive force — that increment of physicality wholly unnecessary to accomplish the arrest — may be resisted by an arrestee with reasonable force. McCracken, 39 Va. App. at 262, 572 S.E.2d at 497; see also Palmer v. Commonwealth, 143 Va. 592, 602-03, 130 S.E. 398, 401 (1925). Strictly speaking, it is not a right to resist the *arrest*. It is only the right to resist any unlawful force accompanying the arrest. Foote v. Commonwealth, 11 Va. App. 61, 66-69, 396 S.E.2d 851, 854-56 (1990).

Relying on this principle, Brown claims that, even if the officers had probable cause to arrest her, they used excessive force in doing so. At trial, however, Brown never testified that she used force to repel an exercise of excessive force by either officer. According to Brown, she used no force at all. She did not punch, kick, hit, or spit on anyone. Officers Burton and Thompson, on the other hand, testified that they used force only to subdue Brown as she violently resisted arrest.

By raising a claim of self-defense, a defendant "implicitly admits" that his use of violence "was intentional and assumes the burden of introducing evidence of justification or excuse that raises a reasonable doubt in the minds of the jurors." Commonwealth v. Sands, 262 Va. 724, 729, 553 S.E.2d 733, 736 (2001) (quoting McGhee v. Commonwealth, 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978)). The jury found Brown failed to carry that burden of production. We can certainly understand why. Brown denied under oath the most basic factual predicate necessary for asserting self-defense — that she defended herself. Under these circumstances, we can hardly deem the jury's decision irrational. If anything, what we said in McCracken can likewise be said here:

> The officers in this case used reasonable force to subdue the
> defendant when he refused to submit. The deputies did not use
> excessive force by ratcheting the force employed when nothing

less brought the defendant under control.  The defendant was not entitled to resist his lawful arrest made with lawful force.

McCracken, 39 Va. App. at 262, 572 S.E.2d at 497.

III.

We hold the jury's verdict on all counts rests on a rational assessment of the evidence. The proof sufficiently removed any reasonable doubt as to Brown's guilt for disorderly conduct, established the legality of her arrest, and defeated her claim of lawfully fighting back in response to the officers' unlawful use of excessive force.

For these reasons, we affirm her convictions.

Affirmed.