COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Petty and Senior Judge Clements
Argued at Richmond, Virginia

MARIE CAMARA TOKORA-MANSARY, S/K/A
   MARIE C. TOKORA-MANSARAY

v.        Record No. 2494-08-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE D. ARTHUR KELSEY
DECEMBER 29, 2009

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Charles S. Sharp, Judge

John A. Keats for appellant.

Gregory W. Franklin, Assistant Attorney General (William C.
Mims, Attorney General, on brief), for appellee.


At a bench trial, the trial court convicted Marie Camara Tokora-Mansary of various

misdemeanor offenses.  On appeal, Tokora-Mansary argues the trial court erroneously denied her

request for a jury trial.  She also challenges the sufficiency of the evidence supporting her

disorderly conduct conviction and the trial court's refusal to apply the other-crimes proviso of

Code § 18.2-415.  Agreeing with her jury waiver argument, but disagreeing with her challenges

to the disorderly conduct conviction, we reverse her convictions and remand.

I.

A.  WAIVER OF JURY TRIAL RIGHT

Tokora-Mansary was convicted in general district court of obstruction of justice in

violation of Code § 18.2-460(B) and disorderly conduct in violation of Code § 18.2-415.  Each

conviction carries a possible incarceration term exceeding six months.  She appealed to the

circuit court seeking a trial *de novo*.  Over the course of a year, the trial date was scheduled,

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

continued, and rescheduled five times. Each of the judge's orders scheduled the matter for "trial without a jury." None of the orders, however, stated Tokora-Mansary had expressly waived her right to a trial by jury.

Two days before trial, Tokora-Mansary filed another continuance motion requesting the case be rescheduled for a jury trial. On the morning of trial, the trial court denied her request, stating:

> [I]n view of the history of this case, in view of the Defendant's appearance on frequent occasions with other attorneys having this case continued with — for trial without a jury over some period of time, that request was not appropriate at this time which constituted a waiver of a jury.

The trial court then conducted a bench trial and found Tokora-Mansary guilty as charged.[1] The court entered conviction orders using standard forms. Each order included various *blank* check boxes, including one titled "jury waived."

On appeal, Tokora-Mansary contends she never expressly waived her right to a jury and nothing in the trial court record reflects she did so. See Va. Const. art. I, § 8; Rule 3A:13(b).[2] We agree. Standing alone, a "scheduling order" merely setting a case down on the court's docket for a bench trial does not suffice because it does not show a "*deliberate action by the accused* indicating an election to forego her right to a jury trial." Jones v. Commonwealth, 24 Va. App. 636, 639, 484 S.E.2d 618, 620 (1997) (quoting Wright v. Commonwealth, 4 Va. App. 303, 306, 357 S.E.2d 547, 549 (1987)). Such an order could suggest as little as the prediction of

---

[1] The trial court also convicted Tokora-Mansary of failing to identify herself to a law enforcement officer in violation of Stafford County Code § 17-7. We dismissed that aspect of the appeal because she neglected to name Stafford County as a party in her notice of appeal. See Woody v. Commonwealth, 53 Va. App. 188, 200, 670 S.E.2d 39, 45 (2008). We later granted her a delayed appeal on this issue which will be decided by another panel of this Court.

[2] A trial court's concurrence with the defendant's waiver is implied by the very act of presiding over a bench trial. See Catlett v. Commonwealth, 198 Va. 505, 507, 95 S.E.2d 177, 178-79 (1956). No specific recordation requirement applies to the court's concurrence. Id.

defense counsel that his client will accept his jury-waiver recommendation and, at the appropriate time, say as much when the trial court engages the defendant in the colloquy required by Rule 3A:13(b).

In addition, no transcript or statement of facts indicates Tokora-Mansary waived her right to a jury. Nor do we see anything in this record like the "jury waiver form" found acceptable by Commonwealth v. Williams, 262 Va. 661, 668, 553 S.E.2d 760, 763 (2001). The transcript of the trial court's remarks from the bench do not imply that on some prior occasion Tokora-Mansary expressly waived her right to a jury or, if she had, that the court satisfied itself that she did so knowingly, voluntarily, and intelligently.[3]

Instead, the trial court expressly denied her jury trial demand "in view of the Defendant's appearance on frequent occasions with other attorneys [and] having this case continued" for a bench trial. If a mere scheduling order does not satisfy the recordation requirement, however, neither will a multitude of such orders. That is particularly true where, as here, the conviction orders conspicuously suggest (by their blank check boxes) the defendant did not waive her right to a jury.

B. Disorderly Conduct Conviction

The trial court found Tokora-Mansary guilty of disorderly conduct under Code § 18.2-415. Tokora-Mansary argues the evidence was insufficient to support her conviction. She also contends that even if the court finds the evidence sufficient, her conviction should be overturned

---

[3] We agree with the Commonwealth that Tokora-Mansary, as the appellant, has the duty to provide a sufficient record for us to intelligently rule on the issues presented on appeal. See Commonwealth Transp. Comm'r v. Target Corp., 274 Va. 341, 348, 650 S.E.2d 92, 96 (2007) (citing Williams, 262 Va. at 669, 553 S.E.2d at 764). This principle applies to appeals claiming a trial court violated a defendant's jury trial right no less than appeals challenging any other claimed deprivation of a constitutional right. Williams, 262 Va. at 669, 553 S.E.2d at 764. We nonetheless disagree with the Commonwealth that Tokora-Mansary failed to shoulder her burden of producing an adequate record for us to rule on the jury trial issue. The court's orders, read in the context of the trial judge's remarks in the transcript, provide a sufficient basis for us to rule.

because her case fits within the other-crimes proviso of Code § 18.2-415. We disagree with both assertions.

### (i) *Sufficiency of the Evidence*

On appeal, we review the evidence in the "light most favorable" to the Commonwealth. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). Viewing the record through this evidentiary prism requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and citation omitted). Our examination of the record, moreover, "is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling. In determining whether there is evidence to sustain a conviction, an appellate court must consider *all the evidence* admitted at trial that is contained in the record." Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008), aff'g, 49 Va. App. 285, 640 S.E.2d 526 (2007) (emphasis added).

This case stemmed from a two-vehicle accident involving Tokora-Mansary at a busy intersection in Stafford County. A sergeant with the local fire and rescue department arrived at the scene of the accident and encountered Tokora-Mansary who quickly became "very belligerent." The sergeant called the local sheriff's department seeking assistance. Officer Jamie Walker of the Stafford County Sheriff's Office was sent to the scene. Agitated, Tokora-Mansary curtly asked him if he would be "witnessing" the accident. He initially suggested the Virginia State Police would probably conduct the investigation. Officer Walker later decided to investigate the accident himself.

After inspecting the damaged vehicles, Officer Walker attempted to interview Tokora-Mansary. She refused to answer because he was not "witnessing" the accident and then

- 4 -

instructed Officer Walker not to speak to her. Her husband, standing nearby, exclaimed to Tokora-Mansary, "[a]re you out [of] your f-ing mind"? Tokora-Mansary then exploded into a loud and profane tirade against her husband. While this outburst continued, Officer Walker noticed the traffic at the intersection was backing up "as far as you could see." Drivers were stopping their vehicles in a nearby parking lot to watch the spectacle of Tokora-Mansary lashing out profanities at her husband. At one point, Tokora-Mansary had put on such a "show" that it "ground the area to a halt" at the intersection.

Officer Walker interrupted the tumult saying, "we can't be doing this. You two need to separate. Everybody needs to calm down." In reply, Tokora-Mansary cursed at the officer and told him to leave. When she told him he "had no business asking her any questions," Walker ordered her to "calm down" because she was behaving in a disorderly manner. Tokora-Mansary insisted she did not have to calm down, and then continued cursing at both her husband and Officer Walker.

Officer Walker repeatedly tried to de-escalate the situation, but Tokora-Mansary would not regain any semblance of self-control. Walker seized Tokora-Mansary by the hand and told her she was under arrest for disorderly conduct. She responded, "no, I'm not." She then "swung away" from Walker and jerked her hand free from his grasp.

Walker again attempted to seize Tokora-Mansary while "continually telling her to stop resisting." While Walker had control of one of her hands, Tokora-Mansary reached into her pocket with her free hand. She "came out with something in her hand" which Walker feared might be a weapon. Reacting quickly, he attempted to employ pepper spray to "get control of her and hopefully incapacitate her long enough to get control of both of those hands." Tokora-Mansary swung upward and struck Walker's hand causing the pepper spray to deploy in his face

and eyes. Officer Walker lost his vision at that point, but nonetheless managed to handcuff Tokora-Mansary.

Officer Walker ordered Tokora-Mansary to sit on the curb while he awaited backup. She refused. Walker then pushed her into a sitting position. After a state trooper arrived, Walker received treatment from the rescue squad for his eyes. Afterward, he attempted to complete his interview of Tokora-Mansary who was seated in the state trooper's patrol car. He asked for her identification, but she refused to give it. She also refused to remove her feet from the car door opening to allow Walker to close the door. Walker had to strap her legs together and forcibly move them so the car door could be shut.

At trial, Tokora-Mansary called her husband to the stand. He testified that his wife was not at all belligerent or angry on the day of the accident. Nor did she speak to anyone (including him) in a rude, loud, or profane manner. Tokora-Mansary also testified on her own behalf, likewise disagreeing with Officer Walker's description of the incident. Both Tokora-Mansary and her husband specifically denied that any altercation caused Walker to be affected by the pepper spray.

Sitting as factfinder, the trial court observed "[t]here is no way of reconciling the testimony between the two sides here" as each is "completely inconsistent" with the other. Assessing the "candor of the testimony of the witnesses," the trial court found that the testimony of Tokora-Mansary and her husband was "simply incredible." "The court finds as a matter of fact that the account given by the Commonwealth is a more credible version" of the events. Based upon this finding, the trial court found Tokora-Mansary guilty of disorderly conduct in violation of Code § 18.2-415.

Under settled principles, we review the trial court's factfinding "with the highest degree of appellate deference." Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231

(2006). An appellate court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)) (emphasis in original). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (citation omitted and emphasis in original). These principles recognize that we are "not permitted to reweigh the evidence," Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007), because appellate courts have no authority "to preside *de novo* over a second trial," Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004).

Governed by this standard, we hold that ample evidence supports Tokora-Mansary's conviction for disorderly conduct. Under Code § 18.2-415(A), a person is guilty of disorderly conduct "if, with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof" he publicly "engages in conduct having a direct tendency to cause acts of violence by the person or persons at whom, individually, such conduct is directed . . . ."

Applied to disorder directed at law enforcement officers, Code § 18.2-415(A) criminalizes words or conduct that "would cause a reasonable officer to respond with physical force or violence" to preempt the anticipated assault or subdue the would-be assaulter. Ford v. City of Newport News, 23 Va. App. 137, 144, 474 S.E.2d 848, 851 (1996) (interpreting analogous ordinance); see also Mannix v. Commonwealth, 31 Va. App. 271, 280, 522 S.E.2d 885, 889 (2000); Keyes v. Virginia Beach, 16 Va. App. 198, 200, 428 S.E.2d 766, 768 (1993). As always, guilt or innocence "depends largely on the facts in the particular case, and in the determination of such question not only the nature of the particular act should be considered but also the time and place of its occurrence as well as all the surrounding circumstances.'" Keyes, 16 Va. App. at 200, 428 S.E.2d at 767 (citation omitted).

This case involved a police officer attempting to investigate an accident in the midst of snarled traffic at a busy intersection. Over a sustained period of time, Tokara-Mansary screamed profanities at the officer, refused to obey any of his commands or answer any of his questions, and loudly cursed at her husband. The tumult reached such a level that passing vehicles stopped in a nearby parking lot to find out the cause of alarm. It became obvious to Officer Walker that he would have to use physical force to subdue Tokara-Mansary both for his own safety and the safety of those vulnerably stopped at the intersection while she carried on her tirade. Under the circumstances, the trial court had a sufficient evidentiary basis to find Tokora-Mansary guilty of disorderly conduct.

### (ii) *Code § 18.2-415's Other-Crimes Proviso*

Even if the evidence supports her disorderly conduct conviction, Tokora-Mansary argues her conduct fits within Code § 18.2-415's proviso that precludes a disorderly conduct conviction based upon "the utterance or display of any words or to include conduct otherwise made punishable" under Title 18.2. The trial court found the provision inapplicable. We do as well.

Code § 18.2-415's proviso reserves "disorderly conduct convictions only for conduct not punishable elsewhere in the criminal code." Battle v. Commonwealth, 50 Va. App. 135, 140, 647 S.E.2d 499, 501 (2007). Sometimes mistaken as a broad limitation on the statute, the other-crimes proviso has a narrow, "finely calibrated" scope. Id. "It is not enough that the defendant could merely be prosecuted for a Title 18.2 crime because that requires only a showing of probable cause" — rather, the conduct exempted by the other-crimes proviso "includes only Title 18.2 crimes for which the defendant could be found guilty beyond a reasonable doubt." Id. Equally important, the other-crimes proviso precludes a conviction only when the "convictable disorderly conduct is comprised *solely* of conduct 'otherwise made punishable under this title.'" Id. at 141, 647 S.E.2d at 502 (emphasis in original). Each distinct act that, in the aggregate,

constitutes disorderly conduct must be otherwise punishable under Title 18.2 for the proviso to apply.

Tokora-Mansary claims the proviso applies here because she "could have been charged under [Code § 18.2-464] which punishes refusal or neglect to obey a conservator of the peace or [Code § 18.2-416] which is the abusive language statute." Appellant's Br. at 20. The issue, however, is not whether she *could* have been charged with other Title 18.2 offenses. It is whether she could have been *found guilty* beyond a reasonable doubt for such offenses. She could not be convicted under Code § 18.2-464 because law enforcement officers are not listed as conservators of the peace in that statute. While she arguably could have been found guilty under Code § 18.2-416 for using abusive language, a conviction under this section would punish only one of the distinct acts that, in the aggregate, constituted the basis for her disorderly conduct conviction. In short, Tokora-Mansary's disorderly conduct was not "comprised *solely* of conduct 'otherwise made punishable'" under Title 18.2. See Battle, 50 Va. App. at 141, 647 S.E.2d at 502 (emphasis in original). The trial court, therefore, did not err in finding the other-crimes proviso inapplicable.

III.

Because the trial court erroneously refused Tokora-Mansary's jury demand, we reverse her convictions for obstruction of justice in violation of Code § 18.2-460 and disorderly conduct in violation of Code § 18.2-415. Finding no factual insufficiency or legal error in her disorderly conduct conviction (and none alleged in her obstruction of justice conviction), we remand both charges for retrial.

Reversed and remanded.