COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, McClanahan and Senior Judge Fitzpatrick
Argued at Salem, Virginia


E. DUANE HOWARD

OPINION BY

v.      Record No. 1584-06-3      JUDGE LARRY G. ELDER
                                  DECEMBER 27, 2007

CITY OF ROANOKE


FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
Jonathan M. Apgar, Judge

G. David Nixon (Huffman & Nixon, P.C., on brief), for appellant.

Andrew E. Stephens, Assistant Commonwealth's Attorney (Office of
the Commonwealth's Attorney for the City of Roanoke, on brief), for
appellee.


E. Duane Howard (appellant) appeals from his bench trial conviction for disorderly

conduct in violation of the Roanoke City Code, based on his behavior during a city council

meeting. On appeal he contends the evidence was insufficient to support his conviction because

his "verbal utterances" were expressly excluded from the scope of the ordinance and his

disorderly conduct, if any, occurred during a recess. We hold the evidence of appellant's

behavior excluding the content of his utterances was sufficient to support his conviction under

the ordinance, and we affirm.

I.

BACKGROUND

On November 7, 2005, appellant attended a meeting of the Roanoke City Council. Prior

to the 2:00 p.m. meeting, appellant and a companion engaged Police Officer John T. Rogers in

conversation, asking Rogers why he was present. Rogers explained to both men "[he] was there

to make sure that everything ran fast and smoothly and everything was secure." They spoke about whether Officer Rogers had ever asked people to leave a meeting, and when he indicated he had, appellant inquired, "[W]hat if they don't want to leave[?]" Officer Rogers responded, "there's a thing called pain compliance."

When the meeting began at 2:00 p.m., Mayor Harris made an "opening statement telling everybody the rules he was going to apply for that meeting." Those rules included time limits at the podium for each of the 54 scheduled speakers; a requirement that comments relate to the issue at hand, which concerned whether to renovate the city's Victory Stadium; and a warning that "any outbursts, . . . any verbal attacks or anything against city council or any other people" would not be tolerated. The mayor also advised the attendees "that the officers were [there] to make sure that was enforced." He said people who did not comply with the rules would "first . . . be asked to leave, and if they didn't, he said the officers [would] escort them out."

After appellant took his turn at the podium, "another man was talking to city council saying his views," including his belief that some members of council were "rotten to the core," and the mayor was "stopping him." At that time, appellant "was yelling out loud. Everybody was a little bit rumbling, but [appellant] was the loudest all the way from the back row . . . yelling toward the city council," "[L]et him speak, let him speak." Appellant had his hands "[c]upped around his mouth" "when he was yelling." The mayor "warned everybody there . . . that this would not be tolerated and . . . he again laid down the rules of exactly what he expected." The mayor reiterated, "We are not having people heckle from the audience. . . . If people heckle from the audience, I will call a recess, and we will have the police officers come forward. We are going to conduct ourselves in a civil manner." After several additional speakers had taken their turns at the podium, the mayor calmly declared a five-minute recess between speakers, after which statements resumed.

At about 4:10 p.m., after more people had taken their turns at the podium, Officer Rogers stepped outside the chamber to brief the officer replacing him "on what was going on and what the mayor's rules were." Rogers told his replacement that appellant and others were heckling and that appellant was the "loudest." At that same time, inside the chamber, the mayor repeated his request for "civil discourse," and as he was attempting to talk, appellant spoke in a loud voice while the mayor was attempting to speak. Appellant was again heckling by "[c]upping" his hands "around his mouth," and his "loud voice" was audible on the videotape of the meeting. When appellant refused to be silent, the mayor said, in an agitated voice, "Mr. Howard—Mr. Howard—Where is the police officer? Where is the officer?" Officer Rogers immediately re-entered the chamber and approached appellant, at which time, the mayor said, "Thank you, sir. Thank you, sir. Council stands in recess, Mr. – officer," and rapped the gavel. Officer Rogers interpreted the mayor's "thank you" as confirmation that appellant Howard "was the same gentlemen [the mayor had been] talking to" for speaking out of turn.

Officer Rogers then spoke to appellant during the recess in order to remove him from the chamber, saying to appellant, "[Y]ou've already had your time to speak. . . . [W]hy don't you be a gentleman, stand up with me, and we'll walk out of here like two . . . adults?" Appellant responded, "I have a right to speak." Officer Rogers again said, "[S]ir, why don't you stand up and walk with me." Appellant said, "[v]ery loud[ly]," "[I]f you want me out of here, you have to drag me out." When Officer Rogers, aided by Officer Johnson, tried again to get appellant to stand and leave the chamber, appellant repeated, "If you want me out, you have to drag me out." Appellant then "wasn't responding" and refused to look at Officer Rogers. Rogers "put . . . what we call a wristlock" on appellant and, using that technique, Rogers "applied pressure for [appellant] to stand up," which appellant did. "[E]ach time [appellant] went to stop," Officer

Rogers again applied pressure. Using this method, Rogers guided appellant outside the doorway to the chamber and then released him.

When the mayor reconvened the council meeting after appellant had been removed from the chamber, the mayor said, "I'll repeat again. I expect our discourse in this chamber to be civil. We are here to discuss an issue. I will *obviously* not tolerate heckling from the chamber. We now pick up with speaker 28 . . . ."

Officer Rogers, after removing appellant from the chamber, obtained a summons charging him with disorderly conduct under Roanoke City Code § 21-9A2. At appellant's trial, the Commonwealth presented evidence in keeping with the above. Appellant testified in his own behalf, conceding the mayor had a right to set rules for the meeting and that he, along with others, broke the rules by speaking out of turn from the audience rather than from the podium. He also conceded that he "verbally resist[ed]" the officers' efforts to remove him from the chamber, but he denied "physically resist[ing]" in any way.

Appellant's counsel argued that the recess was called "because of what [appellant] was saying, not because he refused to leave . . . . It wasn't necessitated by his conduct. It was necessitated by his statements made," and the statements, he averred, were insufficient to constitute disorderly conduct under the ordinance. He also argued that his refusing to leave occurred during the recess and, thus, did not constitute "a disruption of a public meeting because there wasn't a public meeting in place at that time."

In finding the evidence sufficient to convict appellant for the charged offense, the trial court observed,

> I'm satisfied that the evidence shows a technical violation of the ordinance, . . . that the recess was called to facilitate the removal of [appellant]. And the defense has conceded . . . that the mayor and council have the right to have him removed. . . . [T]he evidence shows that there was a willful disruption of the meeting . . . . And the conduct associated with his removal, his resistance and then

- 4 -

forcible removal, as the officer said by the pain application, certainly lengthened . . . the recess and prevented the orderly conduct of the meeting.

* * * * * * *

I'm satisfied the Commonwealth has made [its case]. Treacherous though the shoals of the First Amendment might be . . . in winding our way through this.

Following appellant's conviction, he noted this appeal.

## II.

## ANALYSIS

In reviewing the sufficiency of the evidence on appeal, we examine the record in the light most favorable to the Commonwealth, granting to the evidence all reasonable inferences fairly deducible therefrom. Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). The credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters to be determined by the fact finder. Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).

The ordinance appellant was convicted for violating provides as follows:

> (a)  A person is guilty of disorderly conduct if, with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
>     * * * * * * *
>
> (2)  Willfully . . . disrupts any meeting of the city council . . . if such disruption prevents or interferes with the orderly conduct of such meeting . . . ; provided, however, such conduct shall not be deemed to include the utterance or display of any words . . . .

Roanoke City Code § 21-9. This ordinance parallels the language in Code § 18.2-415, which also authorizes "[t]he governing bodies of counties, cities and towns . . . to adopt ordinances prohibiting and punishing the acts and conduct prohibited by this section." Although Code § 18.2-415 and the ordinance are arranged differently, both contain the provision that the conduct

- 5 -

prohibited "shall not be deemed to include the utterance or display of any words." Thus, prior appellate decisions interpreting Code § 18.2-415 are relevant in our application of the Roanoke disorderly conduct ordinance to the facts in appellant's case.

> The "question as to whether a particular act is disorderly conduct depends largely on the facts in the particular case, and in the determination of such question not only the nature of the particular act should be considered but also the time and place of its occurrence as well as all the surrounding circumstances."

Keyes v. City of Va. Beach, 16 Va. App. 198, 200, 428 S.E.2d 766, 767 (1993) (quoting Collins v. City of Norfolk, 186 Va. 1, 5, 41 S.E.2d 448, 450 (1947)).

Appellant contends the ordinance proscribes only disorderly conduct, not disorderly speech, and that his only conduct consisted of twice refusing to leave the council chamber when asked to do so by Officer Rogers during the recess. He contends that because this conduct occurred during a recess in the council meeting, it did not constitute a "disruption [that] prevent[ed] or interfere[d] with the orderly conduct of such meeting," as required for a conviction. We disagree. A review of the history of Virginia's disorderly conduct statute and the specific language of the statute and related ordinance makes clear the court was entitled to consider the entire course of appellant's conduct, excluding the content of his speech but including the time and manner of his speaking. We hold this evidence of appellant's conduct, viewed in the light most favorable to the Commonwealth, supported his conviction for violating the ordinance.

The provision in the disorderly conduct statute stating that the conduct prohibited "shall not be deemed to include the utterance or display of any words" was added in 1976, following a decision by the United States Court of Appeals for the Fourth Circuit holding the statute "unconstitutionally vague and overbroad particularly given its potential impact on free speech protections." Battle v. Commonwealth, 50 Va. App. 135, 139, 647 S.E.2d 499, 501 (2007)

(citing Squire v. Pace, 516 F.2d 240 (4th Cir. 1975), aff'g 380 F. Supp. 269 (W.D. Va. 1974)). The statute applicable prior to that time, Code § 18.1-253.2, provided in relevant part as follows: "'If any person behaves in a riotous or disorderly manner in any street, highway, public building or any other public place, . . . he shall be guilty of a misdemeanor.'" 380 F. Supp. at 276 (quoting Code § 18.1-253.2 (1973 Supp.)). The district court in Squire recognized the United States Supreme Court's prior holdings that "the state may reasonably limit the time, manner, and place of expression," but it noted that the statute's proscription against "behav[ing] in a riotous or disorderly manner," Code § 18.1-253.2, "fail[ed] to specify with any particularity whatsoever the conduct proscribed . . . [or the] intent required" and gave "no consideration . . . to the exercise of constitutional rights" under the First Amendment. Squire, 380 F. Supp. at 279.

The General Assembly's rewriting of Virginia's disorderly conduct statute in 1976—specifically the addition of language excluding from the statute's scope "the utterance or display of any words"—must be viewed in light of the pronouncements in Squire that the prior statute provided inadequate protections for First Amendment rights. See, e.g., Burke v. Commonwealth, 29 Va. App. 183, 188, 510 S.E.2d 743, 745-46 (1999) ("When new provisions are added to existing legislation by amendment, we presume that, in making such amendment, the legislature 'acted with full knowledge of and in reference to the existing law upon the same subject and the construction placed upon it by the courts.'" (quoting City of Richmond v. Sutherland, 114 Va. 688, 693, 77 S.E. 470, 472 (1913))). The United States Supreme Court decisions upon which the court relied in Squire permit reasonable limits on the time, place and manner of speech and prohibit only punishment based on the *content* of the speech. See Squire, 380 F. Supp. at 279 (citing cases); see also Adams Outdoor Adv. v. City of Newport News, 236 Va. 370, 382, 373 S.E.2d 917, 922 (1988) (holding that "[r]estrictions on the time, place and manner of expressions are permissible if 'they are justified without reference to the content of

- 7 -

the regulated speech, . . . serve a significant governmental interest, and . . . leave open ample alternative channels for communication of the information'" (quoting Va. Pharmacy Bd. v. Va. Citizens Consumer Research, 425 U.S. 748, 771, 96 S. Ct. 1817, 1830, 48 L. Ed. 2d 346, 364 (1976))).  As the Supreme Court of West Virginia recognized in upholding a conviction under that state's "anti-disruption statute" based on time, place, and manner principles,

> If concerned citizens were permitted to assert their First Amendment rights by addressing public meetings at will, without following established procedures, the governmental body would cease to function and no meaningful communication could occur.  "First Amendment rights are not a license to trample upon the rights of others.  They must be exercised responsibly and without depriving others of their rights, the enjoyment of which is equally precious." Barker v. Hardaway, 283 F. Supp. 228, 238-39 (S.D. W. Va. 1968) (quoting Baines v. City of Danville, 337 F.2d 579, 586 (4th Cir.  1964), aff'd, 399 F.2d 638 (4th Cir. 1968), cert. denied, 394 U.S. 905, 89 S. Ct. 1009, 22 L. Ed. 217 (1969).

State v. Berrill, 474 S.E.2d 508, 513-14 (W. Va. 1996) (decided under statute that does not exclude "the utterance or display of any words," as Virginia's does).

Appellant contends the ordinance is unambiguous and that we must strictly construe it and apply its plain meaning, a proposition with which we agree.  See, e.g., Gunn v. Commonwealth, 272 Va. 580, 587, 637 S.E.2d 324, 327-28 (2006).  We disagree, however, with appellant's argument as to the result of such application.  Contrary to the argument of appellant's counsel at trial that "[the ordinance] says yelling is not a violation of it," what the ordinance actually provides is that the proscribed conduct "shall not be deemed to include the utterance or display of any words."  As the trial court expressly found in ruling on the motion to strike, appellant was not removed from council chamber for "the utterance . . . of any words," i.e., the content of what he spoke.  Rather, he was removed based on the "time, manner, and place" in which he spoke—yelling repeatedly with his hands cupped, presumably to further magnify his voice, while the mayor was attempting to speak and after appellant had already had his turn at

the podium. The behavior *accompanying* appellant's speaking, without regard for the content of the speech, was in clear violation of the time, place, and manner restrictions set out by the mayor at the beginning of the meeting and again while the meeting was underway. Cf. Mannix v. Commonwealth, 31 Va. App. 271, 280, 522 S.E.2d 885, 889 (2000) (holding, under different subsection of disorderly conduct statute--which proscribed "conduct having a direct tendency to cause acts of violence by the person or persons at whom, individually, such conduct is directed"--that "board [of supervisors'] chairman could not disregard Mannix's conduct and continue the meeting" because "the chairman was unable to solicit comments from other citizens while Mannix remained at the podium").

If appellant merely had made noises or hummed at a similarly loud volume rather than yelling and chanting, "Let him speak," when the mayor tried to cut off a speaker at the podium, appellant's actions would clearly have run afoul of the ordinance. We see nothing in the language of the ordinance indicating it should be applied any differently when the violation is caused by similarly disruptive conduct that happens to be accompanied by "the utterance . . . of any words." To hold otherwise would allow appellant to insulate himself from criminal responsibility for his disruptive conduct simply because he "utter[ed] . . . any words" while engaging in it.

Further, the evidence supports the trial court's finding that the recess at issue was called solely to permit removal of appellant so that the meeting could continue without his ongoing interruptions, and appellant's counsel said at trial that he "accept[ed] that ruling." When the mayor had called an earlier recess, he did so calmly and indicated the recess would last five minutes. When the mayor called the recess at issue, by contrast, he did so in the midst of appellant's disruption. Immediately prior to declaring the recess at issue, the mayor had been attempting to restate the chamber's rules of discourse but was unable to complete that

- 9 -

restatement due to appellant's ongoing verbal disruption. The mayor then repeated appellant's name in an agitated voice in an effort to persuade appellant to cease the disruption. When appellant continued to talk out of turn, the mayor called for the officers handling security and immediately "gaveled a recess" as he simultaneously thanked the officers for their prompt appearance at appellant's side.

As the recess began, appellant twice refused Officer Rogers's requests to leave the chamber like an "adult[]" and "a gentleman." Appellant stood only when Officer Rogers applied pressure to appellant's wrist in a "wristlock," and appellant walked toward the door only when Officer Rogers re-applied that pressure. Only through the repeated reapplication of that pressure was Officer Rogers able to remove appellant from the chamber. When the mayor reconvened the meeting after appellant had been removed from the chamber, the mayor said, "I'll repeat again. I expect our discourse in this chamber to be civil. We are here to discuss an issue. I will *obviously* not tolerate heckling from the chamber. We now pick up with speaker 28 . . . ." This evidence supports the trial court's finding that the recess was called solely to facilitate appellant's removal and that appellant's behavior in refusing to leave the chamber at Officer Rogers's request delayed the resumption of the meeting.

Thus, appellant's verbal disruptions while the meeting was taking place and his twice failing to leave the council chamber when Officer Rogers asked him to do so and moving toward the door only when Officer Rogers applied pressure through a wristlock were a violation of the ordinance because that conduct disrupted the meeting, caused the mayor to call the recess, and delayed resumption of the meeting, thereby "prevent[ing] or interfer[ing] with the orderly conduct of [the] meeting," Roanoke City Code § 21-9(a)(2).[1] This evidence supported a finding

---

[1] Because the evidence supports the trial court's finding that the recess was called due to appellant's disruptive conduct during the meeting and the need to remove him so that the meeting could continue, we need not decide whether disruptive conduct occurring during a

that appellant engaged in *conduct* that violated the ordinance, including the conduct accompanying his speech, and that he was not punished for his "utterance . . . of any words."

III.

For these reasons, we hold the evidence of appellant's entire course of conduct, excluding the content of his utterances, was sufficient to support his conviction for violating the ordinance, and we affirm.

<u>Affirmed.</u>

---

scheduled recess may constitute "interfere[nce] with the orderly conduct of such meeting" under the ordinance or Code § 18.2-415.